Dwight McDUFFIE, Appellant,

v.

The STATE of Texas, Appellee.

No. 09–88–284 CR.

Court of Appeals of Texas, Beaumont.

April 28, 1993.

Discretionary Review Refused Sept. 22, 1993.

See also 830 S.W.2d 220.

---

Charles Freeman, Houston, for appellant.

Robert Hill Trapp, Crim. Dist. Atty., Bill Burnett, Asst. Crim. Dist. Atty., Coldspring, Joe L. Price, Dist. Atty., Groveton, for the State.

Before WALKER, C.J., and BROOKSHIRE and BURGESS, JJ.

## OPINION

WALKER, Chief Justice.

A jury convicted appellant for the felony offense of Capital Murder. The jury answered the second special issue "No" resulting in appellant's punishment being assessed at life in the Texas Department of Corrections, now known as the Institutional Division of the Texas Department of Criminal Justice. Appellant was essentially convicted for hiring an individual to murder one, Louis Jones, Jr., on or about December 4, 1985. Appellant brings to this Court fifty points of error.

■ Point of error one states, "The trial court committed reversible error by granting the State's challenge for cause against venireperson no. seven, Margie Thomas." Appellant contends that the trial court should not have granted the State's challenge of Ms. Thomas because "both the State and the trial court hoodwinked Thomas into believing that she, as a juror, would *give,* consider or *vote for* the death penalty." The record before us reflects that Ms. Thomas was quite vacillating in her personal opinion with regard to the death penalty.

We find, however, that because the jury assessed punishment at life imprisonment, appellant is not entitled to a new trial on the grounds that the prospective juror was improperly excluded for cause because of her conscientious scruples against inflicting the death penalty. *Bumper v. North Carolina,* 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968); *Garcia v. State,* 626 S.W.2d 46, 55 (Tex.Crim.App.1981); *White v. State,* 591 S.W.2d 851, 858 (Tex.Crim. App.1979); *Simmons v. State,* 504 S.W.2d 465, 468 (Tex.Crim.App.1974), *cert. denied,* 419 U.S. 829, 95 S.Ct. 51, 42 L.Ed.2d 54 (1974); *Buffington v. State,* 801 S.W.2d 151, 157 (Tex.App.—San Antonio 1990, pet. ref'd), *cert. denied,* —— U.S. ——, 112 S.Ct. 218, 116 L.Ed.2d 176 (1991). Point of error one is overruled.

Point of error two states, "The trial court committed reversible error by denying accused's First Motion To Suppress Evidence of Conspiracy: Rule 404(b)'s notice ground." Under the "Argument And Authorities" portion of appellant's brief for this point of error, appellant's lone authority is to Tex.R.Crim.Evid. 404(b) and Tex. R.App.P. 81(b)(2). Rule 404(b) provides, in pertinent part, "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith...." Rule 404(b) goes on to state that such evidence may be admissible for other purposes "provided, upon timely request by the accused, reasonable notice is given in advance of trial of intent to introduce in the State's case in chief such evidence...."

The record reflects that on June 21, 1988, the day trial commenced, appellant filed an instrument entitled, "Accused's First Motion To Suppress Evidence of Conspiracy." Said motion admitted that the State had complied with the notice provision of Rule 404(b) on May 4, 1988. On appeal, appellant again admits the State's compliance with Rule 404(b), but now claims that said notice was not "reasonable." Appellant fails to provide any constitutional, statutory, or case authority to support this claim. Consequently, we consider this point of error to be inadequately briefed and will not

address it. *Vuong v. State*, 830 S.W.2d 929, 940 (Tex.Crim.App.), *cert. denied*, — U.S. ——, 113 S.Ct. 595, 121 L.Ed.2d 533 (1992); Tex.R.App.P. 74(f). Point of error two is overruled.

■ Point of error three provides, "The trial court committed reversible error by not considering recusal based on Third Accused's Motion To Recuse filed on 21 June 1988." Recusal of judges in criminal cases is governed by Tex.R.Civ.P. 18a of which paragraph (a) provides:

At least ten days before the date set for trial or other hearing in any court other than the Supreme Court, the Court of Criminal Appeals or the court of appeals, any party may file with the clerk of the court a motion stating grounds why the judge before whom the case is pending should not sit in the case. The grounds may include any disability of the judge to sit in the case. The motion shall be verified and must state with particularity the grounds why the judge before whom the case is pending should not sit. The motion shall be made on personal knowledge and shall set forth such facts as would be admissible in evidence provided that facts may be stated upon information and belief if the grounds of such belief are specifically stated.

In the instant case, the recusal motion in question was filed on the day of trial. Regardless of what may or may not be read into footnote 3 of *DeBlanc v. State*,[1] we find the operative language of that opinion disposing of the recusal issue contained in the following:

Rule 18a obviously presupposes that litigants should not be able to halt judicial proceedings at will by the simple invocation of the mandatory provisions of Article 200a, section 6 .... [2] In the case at bar, appellant failed to comply with Rule 18a and as such he will not be heard to complain on appeal of the denial of an opportunity to have his motion heard by

a judge other than the one assigned to his case.

In the instant case, we find no abuse of discretion by the trial court in summarily refusing to consider appellant's blatantly untimely recusal motion. Furthermore, appellant's motion completely fails to comply with what we perceive to be the mandatory language of Rule 18a as to "particularity" with regard to the grounds for recusal. Appellant's motion also fails to set forth any facts "as would be admissible in evidence." For all of the above reasons, appellant's third point of error is overruled.

■ Appellant's fourth point of error provides, "The trial court committed reversible error by not considering disqualification based on Third Accused's Motion To Recuse filed on 21 June 1988." In examining appellant's motion and his argument under this point of error, appellant fails to appreciate the distinction between "recusal" and "disqualification" of a judge. With regard to recusal, see the discussion of Rule 18a, *supra*.

Tex.Const. art. V, sec. 11 provides a basis for disqualification of judges, stating in part:

No judge shall sit in any case wherein he may be interested, or where either of the parties may be connected with him, either by affinity or consanguinity, within such a degree as may be prescribed by law, or when he shall have been counsel in the case. . . .

Tex.Code Crim.Proc.Ann. art. 30.01 (Vernon 1989)[3] provides:

No judge or justice of the peace shall sit in any case where he may be the party injured, or where he has been of counsel for the State or the accused, or where the accused or the party injured may be connected with him by consanguinity or affinity within the third degree.

---

1. 799 S.W.2d 701, 705 (Tex.Crim.App.1990), *cert. denied*, — U.S. ——, 111 S.Ct. 2912, 115 L.Ed.2d 1075 (1991).

2. Tex.Rev.Civ.Stat.Ann. art. 200a, sec. 6 was repealed in 1985.

3. As the instant case was tried in 1988, the 1991 amendment to Article 30.01 is not applicable. *See* Tex.Code Crim.Proc.Ann. art. 30.01 (Vernon Supp.1993).

In the instant case, appellant's motion provides no specific or particularized facts to support disqualification of the trial judge. Appellant's brief refers us to a portion of the statement of facts which is reproduced as follows:

BY MR. PINK (counsel for appellant):

And we would ask the Court to make a finding of fact and conclusion of law, and the Court, also, on the motion to recuse, we would like to have that be an ongoing motion in the sense that we discovered things that we had no knowledge of prior to the actual selection of the jury to this particular point, as the Court knows that in certain aspects, we feel that under those propositions, that it would not be untimely in the sense that the first instance we discovered the relationships and the possibility of biased (sic) toward the State, in the State's favor, we recognized that and made motions concerning the recuse (sic) as soon as we found out perhaps that there was some problem in that area. So, we would just ask that that just be a continuing type motion as we develop and learn different informations (sic) concerning the Court's role.

BY THE COURT:

I have no problem with the motion to recuse, it being continued and it being a continuing type motion. I am still not considering it because it was filed after the trial had begun, and it wasn't timely filed.

Now on the Accused First Motion to Continuance. (sic)

■ Neither in this point of error nor in appellant's third point of error does he provide us with any record reference to evidence of "interest" on the part of the trial court, or of the trial court's connection to any party "by consanguinity or affinity." The Court of Criminal Appeals has held that the grounds of disqualification stated in the Texas Constitution and the Code of Criminal Procedure are exclusive. *Ex parte Largent*, 144 Tex.Crim. 592, 162 S.W.2d 419, 426 (on motion for rehearing), *cert. denied*, 317 U.S. 668, 63 S.Ct. 72, 87 L.Ed. 536 (1942).

In the instant case, other than a general complaint of bias on the part of the trial court based solely upon the claim that the trial court adjudicated a divorce case involving the murder victim and the victim's wife, who appellant characterizes as a "co-conspirator," there is no evidence of interest or bias on the part of the trial court which could be characterized as depriving appellant of due process of law. *See McClenan v. State*, 661 S.W.2d 108, 109 (Tex.Crim.App.1983). Point of error four is overruled.

■ Point of error five avers, "The trial court committed reversible error by denying defendant's Motion For Change of Venue." Our standard of review is whether the trial court abused its discretion in refusing to grant the change of venue. *DeBlanc, supra*, 799 S.W.2d at 705. Prior to commencement of trial, the trial court held a hearing on appellant's change of venue motion. Appellant called his co-counsel, Walter Pink, as a witness. Mr. Pink's testimony essentially consisted of his feelings that the State and the trial court engaged in ex parte proceedings in an attempt to deprive appellant of a fair trial. Mr. Pink had no personal knowledge of any meetings between the State and the trial court.

Appellant was next called to testify. Appellant testified that a fellow inmate in the county jail, Bubba Gold by name, told appellant that he (Gold) overheard the prosecutor for the State and the judge in the instant case discussing bond reduction for appellant. Appellant stated that Gold quoted one of the parties as saying, "[L]et the niger (sic) stay in jail, keep his bond at a certain amount, what it is." Appellant then related an incident in which he personally overheard "the Sheriff" refer to appellant as "the murderer" as appellant walked into the courthouse. Appellant asserts in his brief that three newspaper articles were introduced into evidence without objection during this hearing. Neither party provides us with a reference to the record as to the location of these articles. Appellant next offered all of the evidence "from

all the prior motions on Change of Venue Hearings, all that evidence as well as all the Voir Dire into evidence." The trial court expressly agreed to take notice of all such evidence.

Appellant then attempted to elicit testimony from ten of the black jurors who had already been removed from the venire. The trial court refused to allow these jurors to re-take the stand for the change of venue issue, stating:

BY THE COURT:

> In regard to that point right there, you struck—you and Mr. Pink used a preemptory (sic) challenge on a black juror that the State accepted. Now, further the Voir Dire has ended, and in my opinion that was completely correct in my ruling on your Motion for Change of Venue, because out of the sixty-three or sixty-eight or how ever many jurors that was (sic) talked to, there weren't over two or three that had an opinion one way or the other.

The trial court expressly left open the possibility of consideration of this issue in a post-conviction motion for new trial proceeding. The transcript reflects, however, that this issue was not included as a ground in appellant's Motion For New Trial.

■ At the venue hearing, appellant bore the heavy burden of affirmatively proving his ground for change of venue: the existence in the community of such prejudice that the likelihood of obtaining a fair and impartial trial was doubtful. *Beets v. State*, 767 S.W.2d 711, 743 (Tex. Crim.App.1987), *cert. denied*, 492 U.S. 912, 109 S.Ct. 3272, 106 L.Ed.2d 579 (1989). Absent such a showing, the trial court cannot be said to have abused its discretion by acting arbitrarily and unreasonably, *see Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim.App.1991) (opinion on rehearing), and its denial of a change of venue will not be disturbed on appeal. *Ransom v. State*, 789 S.W.2d 572, 579 (Tex.Crim.App.1989), *cert. denied*, 497 U.S. 1010, 110 S.Ct. 3255, 111 L.Ed.2d 765 (1990). In the instant case, appellant was provided ample opportunity to elicit whatever evidence he needed to support his change of venue motion during the individual voir dire of each venireperson. The trial court did not abuse its discretion in refusing appellant's request to recall the ten black venirepersons who had already been individually examined and been stricken peremptorily or for cause. Furthermore, in examining the record before us, it is unclear if appellant was attempting to prove community prejudice in the form of excessive adverse publicity of the crime, or in the form of overt and covert racism in San Jacinto County. In either case, we find that appellant failed to shoulder the heavy burden he bore in proving such prejudice existed so as to deprive him of a fair trial. Indeed, the fact that appellant was not assessed the death penalty is some indication that whatever prejudice existed, if any, did not take the form of the "lynch mob" mentality portrayed by appellant and his counsel. Point of error five is overruled.

■ Point of error six provides, "The trial court committed reversible error by denying appellant's request to meet his burden of persuasion on his 'General *Batsun* [sic].'" We strongly note at the outset of our consideration of this point of error that appellant is not complaining that the trial court erred in overruling his objections to the State's use of its peremptory strikes. That issue is presented in point of error seven. Here, appellant's complaint is grounded in the fact that the trial court refused appellant's request to recall ten black venirepersons who had already been individually examined during voir dire and then stricken peremptorily or for cause. When asked what he expected to prove by re-calling the ten venirepersons, appellant's counsel stated the following:

> I expect to prove that each one of these individuals is a voting citizen in this County, and the fact that he or she is a voting citizen of this County, is black, he or she has a right to be on this jury, that he or she has personal knowledge of the events and other things that have occurred involving this trial, both in the news media and otherwise, indicate that the Prosecution and all of the pow-

erful parties in this great County of San Jacinto, in the Great State of Texas, have a bias prejudice and interests in denying Dwight McDuffie a fair and impartial trial, based on racism, based on trying to exclude blacks as being part of that criminal justice system, and based on trying to put twelve white hangmen in this jury box to go and give this boy the Death Penalty. That is the evidence that I want to put on, and these twelve people, or these ten black jurors sitting out in the hall who have come down three times, should have a right to come in here and testify, or to testify to that fact.

■ The record before us clearly reflects that all of this took place during what was characterized by all parties as a *Batson*[4] hearing. It is quite obvious that, for whatever reason, the response by appellant's counsel to the court's query contained language that was meant for a change of venue issue, and had nothing to do with aiding appellant in overcoming any race-neutral explanations proffered by the State in the context of *Batson*. Generally, once the prosecutor has taken the witness stand to explain his or her race-neutral reasons for striking each black juror in question, and has been subjected to full cross-examination by defense counsel, the record for *Batson* purposes is usually complete. It is then up to defense counsel to fashion an argument to the trial court that turns the prosecutor's race-neutral reasons into impermissible race-conscious reasons. Indeed, in *Young v. State*, 826 S.W.2d 141 (Tex.Crim.App.1991), the Court of Criminal Appeals stated the following with regard to the use of "comparative analysis" by the defense in *Batson* hearings:

The "comparative analysis" is also not the cross-examination of the prosecutor at the *Batson* hearing, although it may indeed be a part of that examination. Rather, we believe a comparative analysis is an argument of the evidence presented to the trial judge during the voir dire and the *Batson* hearing. It is defense counsel's opportunity to rehash the voir dire, argue any perceived discrepan-

cies in the voir dire and impeaching evidence brought out during cross-examination of the prosecutor, and show that the prosecutor's race neutral explanations for his peremptory strikes are not in fact race neutral.

*Id.* at 145–146.

■ Finally, a defendant who recalls the stricken jurors subjects them to cross-examination by the prosecutor. This could be fatal to the defendant's *Batson* issue in that a prosecutor who did not question some or all of the stricken jurors during voir dire now has an opportunity to use the testimony of these jurors to shore up the race-neutral reasons he has already provided, and to discover new race-neutral reasons to provide to the trial court so as to further justify his strikes. All of this considered, we cannot say that the trial court's refusal of appellant's request to recall the ten black venirepersons during the *Batson* hearing was clearly erroneous. Point of error six is overruled.

■ Point of error seven is presented to us in this fashion, "The trial court committed reversible error by overruling appellant's 'General *Batsun* [sic].'" Appellant's "ARGUMENT AND AUTHORITIES" under point of error seven is set out *in its entirety* as follows (all emphasis is supplied by appellant in his brief):

Purposeful discrimination may not be the sole motivating factor underlying *any* of the State's peremptory challenges. *Henry v. State*, 729 S.W.2d 732, 737 (Tex.Crim.App.1987) (*en banc*) (Opinion on Appellant's Petition for Discretionary Review); *see generally* U.S. Const. amend. XIV; Tex. Const. art. I, sec. 3, 3a. The trial court ruled that Appellant established a *prima facie case* of purposeful discrimination (SFXXII 118). Even a rough reading of *voir dire* examination bares a naked fact: the State had the bad habit of hoodwinking and misleading each African–American venireperson with a strikingly similar sermon in this cause. Such bad habit is referred to as *targeting* or otherwise engaging

---

**4.** *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

members of the cognizable racial group in disparate examination. *Keeton v. State, supra* at 868. Rudimentary *comparison analysis* reveals that the African–American venirepersons were treated differently than non–African–American venirepersons sufficient to rebut the State's purported neutral explanations for his peremptory challenges; and, supports Appellant's request that this Honorable Court hold that the trial court clearly erred in finding no purposeful discrimination in the jury selection process in Appellant's trial. *See Whitsey v. State,* 796 S.W.2d 707, 728 (Tex.Crim. App.1989) *(en banc)* (Opinion on State's Motion for Rehearing). *Remember the all white jury.*

We note at the outset that appellant's "general *Batson*" objection to the trial court encompassed some ten stricken African–American venirepersons, yet on appeal the complaint is limited to jurors Barbara Ziegler, Peggy Hutchinson, Cynthia Harrison, Barry Punch, and Floyd Robinson. With respect to further complaint as to the State's strikes of any other African–American venirepersons, appellant has preserved nothing for review as his objection at trial differs from his complaint on appeal. *Sterling v. State,* 800 S.W.2d 513, 521 (Tex. Crim.App.1990), *cert. denied,* — U.S. —, 111 S.Ct. 2816, 115 L.Ed.2d 988 (1991).

 Appellant invites this Court to conduct a "[r]udimentary comparison analysis" of the State's voir dire of the white versus the African–American venirepersons so as to sustain his complaint under *Batson.* Appellant, however, provides us with absolutely no references to the record where responses from acceptable white venirepersons were the same or similar to responses from unacceptable African–American venirepersons, or where the State's questioning of African–American venirepersons was at leást facially disparate from that of the white venirepersons. The individual voir dire in the instant case consists of twenty-one volumes containing some 5,197 pages of testimony and proceedings. We decline appellant's invitation to conduct such an analysis without proper

record references. Appellate review in this state extends only to complaints made in accordance with our published rules of appellate procedure which require an appellant to specify the pages in the record where the alleged error can be found. *Narvaiz v. State,* 840 S.W.2d 415, 429 (Tex. Crim.App.1992), *cert. denied,* — U.S. —, 113 S.Ct. 1422, 122 L.Ed.2d 791 (1993). Appellant's failure to provide proper record references renders this portion of his complaint inadequately briefed and not preserved for our review.

 We have examined the individual voir dire of the five African–American venirepersons specifically referenced above and find that the State's explanations for each of the strikes contained adequate race-neutral reasons. An appellate court should reverse the decision of the trial judge to excuse a juror only where his decision was "clearly erroneous." *Sterling v. State,* 830 S.W.2d 114, 118 (Tex.Crim. App.), *cert. denied,* — U.S. —, 113 S.Ct. 816, 121 L.Ed.2d 688 (1992); *Hill v. State,* 827 S.W.2d 860, 865–866 (Tex.Crim.App.), *cert. denied,* — U.S. —, 113 S.Ct. 297, 121 L.Ed.2d 221 (1992). In making such a determination, we consider the venireperson's voir dire as a whole and accord due deference to the trial court's ruling. *Crane v. State,* 786 S.W.2d 338, 344 (Tex. Crim.App.1990). We reiterate that in comparing each of the five jurors' individual voir dire with the explanations given by the prosecutor, we cannot say that the State's strikes were purely racially motivated or made for reasons wholly unrelated to the outcome of the trial. *See Hill, supra* 827 S.W.2d at 868. Point of error seven is overruled.

 Appellant's eighth point of error states, "The trial court committed reversible error by denying 'Accused (sic) Motion To Suppress Contents of Oral Communication and Evidence Derived From Such Communications.'" Appellant's complaint is apparently based on the fact that the police "wired" three individuals with body microphones and recorded their conversations with appellant. Appellant claims such recordings were illegal as violative of TEX.

CODE CRIM.PROC.ANN. art. 18.20 (Vernon Supp.1993). Article 18.20 is entitled, "Interception and Use of Wire, Oral, or Electronic Communications." A line of cases from our Corpus Christi brethren have held Article 18.20 inapplicable in situations where a consenting informant or other private individual tapes the conversation with an accused. *Ward v. State*, 787 S.W.2d 116, 119 (Tex.App.—Corpus Christi 1990, pet. ref'd); *Beck v. State*, 741 S.W.2d 516, 524 (Tex.App.—Corpus Christi 1987, pet. ref'd); *Esterline v. State*, 707 S.W.2d 171, 173 (Tex.App.—Corpus Christi 1986, pet. ref'd). *See also, Rovinsky v. State*, 605 S.W.2d 578, 582 (Tex.Crim.App.1980). Indeed, Article 18.20, sec. 1(4) defines "Electronic, mechanical, or other device" as a "device that may be used for the *nonconsensual* interception of wire, oral, or electronic communications...." (emphasis ours). The record before us reflects that each of the informants involved consented to being "wired" and that appellant himself testified that he was not forced into talking with the informants. The trial court properly denied appellant's motion. Point of error eight is overruled.

Point of error nine complains as follows, "The trial court committed reversible error by denying Accused's Motion To Suppress Extraneous Offenses." The statement of facts reflects that appellant objected to the mention by the State of any admissions or statements of appellant, including those contained in any taped conversations, and requested the trial court hold a "Rule 104 Hearing" to determine if these statements contained any extraneous offenses that should not be heard by the jury. The State responded that just because appellant's taped conversations with other people may contain evidence of extraneous offenses, appellant had no right to a motion to suppress under TEX.R.CRIM.EVID. 404(b). Appellant's counsel immediately responded, "It is not 404B (sic)."

On appeal, however, appellant argues and relies on the contents of his written motion which is grounded on Rule 404(b). Furthermore, appellant's brief cites to TEX. CODE CRIM.PROC.ANN. art. 38.14 (Vernon 1979) dealing with testimony of accomplices. We find that appellant has not preserved point of error nine for review as his objection at trial blatantly differs from what he is now complaining of on appeal. *Sterling, supra*, 800 S.W.2d at 521. Point of error nine is overruled.

Appellant complains in point of error ten, "The trial court committed reversible error by overruling appellant's objection to the State's question, 'What type of person was he [Louis Jones, Jr.]?'" At the root of this point of error is the following exchange between the State and the State's first witness, Patricia Jones, the victim's daughter-in-law:

Q. (the State) What type of person was he? How would you describe him?

> BY MR. PINK (for appellant): We would object to that character type testimony, not relevant at this particular point.

> BY THE COURT: Overruled the objection.

Q. What type person was he?

A. Louis was a nice person. He helped everybody out, he was a good father-in-law, you know, we all have our bad points, but most of his were good points, and he was always good to everybody who asked for a helping hand.

As a general rule, it is never competent for the State in the first instance to prove that the murder victim was peaceable and inoffensive; such evidence becomes admissible in rebuttal when the opposite has been testified to in behalf of the defense, or when the defendant seeks to justify the homicide on the ground of threats made by the deceased. *Armstrong v. State*, 718 S.W.2d 686, 697 (Tex.Crim.App. 1985). *See also*, TEX.R.CRIM.EVID. 404(a)(2). Such inadmissible evidence can be rendered harmless, however, if other evidence at trial is admitted without objection and it proves the same fact that the inadmissible evidence sought to prove. *Mayes v. State*, 816 S.W.2d 79, 88 (Tex.Crim.App.1991); *Anderson v. State*, 717 S.W.2d 622, 628 (Tex.Crim.App.1986), *cert. dismissed*, 496 U.S. 944, 110 S.Ct. 3232, 110 L.Ed.2d 678 (1990).

In the instant case, the record reflects the following testimony was elicited from the victim's widow, Sallie Mae Jones, during cross-examination by counsel for appellant:

Q. (for appellant) Prior to his alcoholic problems, what kind of man was he?
A. (Sallie Mae Jones) Well, I would say he was very pleasant, and the only thing, he was very pleasant, I would say.
Q. Was he a good father?
A. Yes.
Q. And especially a good husband?
A. Yes.

 Based on the unobjected to testimony of Sallie Mae Jones, the fact that the inadmissible character testimony of Patricia Jones occurred very early in an otherwise lengthy trial, the fact that the victim's "good" character was called into question by testimony from Sallie Mae Jones, and the fact that the victim's "good" character was not emphasized to any significant degree by the State, we find beyond a reasonable doubt that the inadmissible character testimony of Patricia Jones did not contribute to the jury's verdict in either stage of the trial. TEX.R.APP.P. 81(b)(2). Point of error ten is overruled.

Points of error eleven and twelve provide, respectively: "The trial court committed reversible error by overruling appellant's objections to testimony concerning the so-called Memorial Day incident, i.e., when Louis Jones, Jr., suffered injury to his jaw: *Gant* ground." "The trial court committed reversible error by overruling appellant's objections to testimony concerning the so-called Memorial Day incident, i.e., when Louis Jones, Jr., suffered injury to his jaw: *Rule 404(b)'s* notice ground." In our examination of the portion of the statement of facts referenced by appellant under these points of error, we note that the complained of testimony was elicited during a hearing out of the presence of the jury. Other than that, no testimony concerning the "Memorial Day incident" is apparent at the record references provided under either point of error eleven or twelve. We find, therefore, that these points of error are inadequately briefed

and present nothing for review. *Vuong, supra,* 830 S.W.2d at 940. *See* TEX. R.APP.P. 74(d) and (f). Points of error eleven and twelve are overruled.

 Point of error thirteen provides, "The trial court committed reversible error by denying appellant's motion for mistrial as a result of the State's assertion that he was tired of this bullshit." Appellant argues that this sidebar remark was an attempt to strike at appellant over the shoulders of his trial counsel. Appellant supports his argument by citing the cases of *Fuentes v. State,* 664 S.W.2d 333 (Tex. Crim.App.1984) and *Cook v. State,* 540 S.W.2d 708 (Tex.Crim.App.1976). In both *Fuentes* and *Cook,* what can only be characterized as blatantly repugnant conduct on the part of the State took place in the full hearing of the jury. Both cases resulted in reversal and remand for the respective defendants.

In the instant case, the record reflects a hearing outside the jury's presence took place and that apparently the only individual who heard the State exclaim, "I am tired of this bullshit," immediately following appellant's counsel's request to approach the bench, was appellant. Appellant's brother, who was seated in the visitor's gallery on the first row testified that he heard the State exclaim, "... I'm tired of this." Both of appellant's trial attorneys as well as the trial court did not hear the utterance. The State apologized for making the remark stating:

I did make the comment, I was facing the audience, though, and the Defendant McDuffie over here, and that is the reason that they could hear me, so well. I reached for the book, I turned around and I was facing them, with my back to the jury, and I did make the comment and I apologize....

When the jury returned to the courtroom, the trial court admonished them as follows:

Ladies and Gentlemen of the jury, we will proceed with this witness. It has come to the Court's attention that there was an exclamation or remark made by the District Attorney immediately prior

to the last recess before he approached the bench. You are instructed that you are—and I didn't hear it, I didn't observe it, I don't know if any of you heard it or saw it, either, but if you did, you are instructed to disregard any expression you might have heard him utter, or any expression you might have noted that he made.

■ Immediately following this admonishment, appellant requested a mistrial and was denied. Although we strongly disapprove of any such remarks by either party at any time during a trial, we cannot equate the instant situation with those described in *Fuentes* or *Cook*. The State's remark in the instant case was not openly addressed to the jury, nor was it a blatant or obvious attack at the integrity of appellant's counsel or appellant's defense strategy. Normally, following an objectional comment or argument, an instruction by the trial court to disregard will obviate the error. *See Bell v. State*, 724 S.W.2d 780, 803 (Tex.Crim.App.1986), *cert. denied*, 479 U.S. 1046, 107 S.Ct. 910, 93 L.Ed.2d 860 (1987); *Bogan v. State*, 837 S.W.2d 422, 430 (Tex.App.—Beaumont 1992, no pet.). Unless the comment or argument is so inflammatory that its prejudicial effect cannot reasonably be removed by such an admonishment, reversal is not in order. *Kinnamon v. State*, 791 S.W.2d 84, 89 (Tex. Crim.App.1990). In the instant case, we find that the State's remark was not so inflammatory or prejudicial that it could not be cured by the trial court's timely admonishment. Point of error thirteen is overruled.

Point of error fourteen states, "The trial court committed reversible error by overruling and denying appellant's objections to the State's manifestly improper question, 'But, *attorney Pink* represented you in the probate of the estate, though, didn't he'?" The record reflects the following exchange occurred during direct examination of the victim's widow, Sallie Mae Jones, by the State:

Q. (the State) Okay. And, what did you do with the will after his death?

A. (Sallie Mae Jones) What did I do?

Q. Yes. What did you do with that will?

A. I got it and I gave it to the attorney to get ready for—for division or whatever.

Q. Okay. What attorney did you give it to?

A. I gave it to Attorney Pink.

Q. Walter Pink, right here?

A. Yes, because he stated at that time, that he could not handle that because he was a different type of lawyer, but Attorney Wallace would handle it.

Q. But, Attorney Pink represented you in the probate of that estate, though, didn't he?

A. And also, Attorney Wallace.

Q. Okay.

BY MR. FREEMAN: May I approach the bench, just a minute.

■ Tex.R.App.P. 52(a) provides, in pertinent part: "In order to preserve a complaint for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling he desired the court to make if the specific grounds were not apparent from the context." The purpose of a timely objection is to give the trial judge the opportunity to cure error. *Hollins v. State*, 805 S.W.2d 475, 476 (Tex.Crim.App.1991). In order to be considered timely, an objection must be made as soon as the ground of objection becomes apparent, i.e., as soon as the defense knows or should know that an error has occurred. *Id.; Thompson v. State*, 691 S.W.2d 627, 635 (Tex.Crim.App.1984), *cert. denied*, 474 U.S. 865, 106 S.Ct. 184, 88 L.Ed.2d 153 (1985). In the instant case, counsel for appellant waited, for no apparent reason, until the State asked not one but two questions regarding Mr. Pink's involvement with the victim's will. Indeed, the question of which appellant specifically complains was allowed to be answered by Mrs. Jones before counsel made any move to object.

Appellant argues that, "[t]he State was openly and intentionally suggesting that *Pink*, who was otherwise handcuffed to his counsel seat, served as a bridge between

Sallie Mae Jones and Appellant in this cause!!" The record reflects, however, that Mrs. Jones had already testified to having known appellant's parents for over thirty years and had considered appellant's parents to be close friends. Furthermore, Mrs. Jones testified that appellant would visit Mrs. Jones and her mother, Mrs. Eastland, while Mrs. Jones was living at Mrs. Eastland's residence during the pendency of the Joneses' divorce. Thus, there was ample evidence before the jury prior to the alleged improper question to connect appellant with Mrs. Jones. We find, therefore, that the alleged improper question by the State was not so prejudicial that an instruction to disregard could not have cured whatever harm may have occurred, and, as such, appellant's failure to timely object waived any error. *Hollins, supra*, 805 S.W.2d at 476; *Romo v. State*, 631 S.W.2d 504, 505–506 (Tex.Crim.App.1982). Point of error fourteen is overruled.

Appellant's fifteenth point of error attempts to revisit the complaint contained in point of error eight, *viz:* the issue of the contents of "intercepted wire or oral communications" in violation of Tex.Code Crim. Proc.Ann. art. 18.20 (Vernon Supp.1993). Appellant's brief references a different portion of the statement of facts containing a second hearing on what appears to be the same motion and issues raised in appellant's eighth point of error. We again find that appellant's reliance on Article 18.20 is totally misplaced for the same reasons set out in our analysis of point of error eight. Furthermore, appellant's "unreasonable search and seizure" argument is also misplaced as it is basically tied to the assumption that Article 18.20 is applicable to the conduct of the informants used in this case. There is no claim that appellant was in police custody at the time of the alleged recordings nor is it claimed that appellant was coerced into making any inculpatory statements that may be contained in these recordings. Point of error fifteen is overruled.

Point of error sixteen complains, "The trial court committed reversible error by denying accused's Motion To Suppress Admissions By Party–Opponents." The record reflects that, following a brief hearing on appellant's written motion, the trial court denied said motion but granted appellant's request to have a hearing outside the jury's presence to determine admissibility of admissions by any co-conspirators. Appellant references us to brief portions of testimony taken from witnesses Ernest Reescano and Calvin McGowen.[5] With regard to Reescano's testimony, the statement of facts reflects that Reescano was testifying to *appellant's* out of court statement, not the statement of any other person. As such, it was not hearsay and was admissible under Tex.R.Crim.Evid. 801(e)(2)(A) as a statement offered against appellant which was appellant's own statement in either his individual or representative capacity.

As to the complained of portion of Calvin McGowen's testimony, the statement of facts reflects that McGowen was testifying to how he received his share of the $5,000 promised to him by appellant following the victim's murder by McGowen and Floyd Wyatt. McGowen testified that he and Wyatt first split $1000 which Wyatt verbally represented to McGowen as having come from appellant. McGowen stated that later appellant personally paid McGowen approximately $500 which McGowen also split with Wyatt. Finally, Wyatt gave McGowen $300 which Wyatt verbally represented to McGowen as having come from appellant. McGowen testified that all of the payments were part of the $5000 deal with appellant for murdering the victim. Since either "remuneration" or "the promise of remuneration" is an essential element of the offense charged, we find the testimony of McGowen concerning Wyatt's representations that the money came from appellant falls under Tex.R.Crim.Evid. 801(e)(2)(E) as both a representation "during the course and in furtherance of the conspiracy." *See Meador v. State*, 812

---

5. Accomplice witness instructions were included in the trial court's instructions to the jury with regard to witnesses Reescano and McGow-

en as well as to witnesses Sallie Mae Jones and Joe Oliver Davis. *See* Tex.Code Crim.Proc.Ann. art. 38.14 (Vernon 1979).

S.W.2d 330 (Tex.Crim.App.1991). Point of error sixteen is overruled.

Point of error seventeen provides, "The trial court committed reversible error by denying Accused's Motion To Suppress Any Statement or Admission By Accused." In this point of error, appellant is attempting to rehash his complaints contained in points of error eight and fifteen with regard to the recorded conversations between himself and other individuals involved in the victim's murder. The instant point of error, however, relies on a violation of the Texas Constitution as well as Article 18.20 and other statutory law. We rely on our discussions of points of error eight and fifteen in overruling this point of error. As to appellant's reliance on TEX.CODE CRIM.PROC.ANN. arts. 38.21, 38.22, and 38.23 (Vernon 1979 & Vernon Supp.1993), the evidence reflects that appellant was not in police custody at the time any of these conversations took place, and appellant testified that he was not forced to engage in the conversations. *See Rathmell v. State,* 653 S.W.2d 498 (Tex.App.—Corpus Christi 1983, pet. ref'd). Furthermore, appellant provides us with no case authority supporting his constitutional complaints. As such, this point is overruled for the additional reason that it is inadequately briefed. *Vuong, supra,* 830 S.W.2d at 940. *See* TEX.R.APP.P. 74(d) and (f). Point of error seventeen is overruled.

Appellant's eighteenth point of error states, "The trial court committed reversible error by overruling appellant's objection to the trial court's continuous remark, 'Overrule the objection,' directed towards appellant; and, 'How much was missing, Mrs. Jones,' directed towards the State's witness, Sallie Mae Jones." Appellant's brief contends, "Such remark was clearly calculated to benefit the State and prejudice Appellant's rights by suggesting that such large amount of missing money was significant in this cause." In order to constitute a reversible violation of TEX.CODE CRIM.PROC.ANN. art. 38.05 (Vernon 1979) directing trial judges not to discuss or to comment upon the weight of admitted evidence, a comment must be such that it is reasonably calculated to benefit the State

or prejudice the rights of the defendant. *Marks v. State,* 617 S.W.2d 250, 252 (Tex.Crim.App.1981). In the instant case, we are really at a loss to understand how the complained of remarks benefit the State or prejudice appellant. The fact that there may have been a large amount of money missing from the community estate at the time the victim's divorce was to have been finalized is not of obvious significance to us, and, other than one conclusory statement, appellant does not direct our attention to how the trial court's alleged improper comments were of any significance to either party in this case. Point of error eighteen is overruled.

Point of error nineteen complains, "The trial court committed reversible error by overruling appellant's objection to Joe Oliver Davis' testimony, '[I was supposed to] see if I could get him to give me some of the money or something.'" The statement of facts reflects the following testimony elicited by the State on direct examination of Joe Oliver Davis:

Q. (the State) Okay. Who were the police officers, you may not know them by name, but, you know where they were from?

A. (Davis) Conroe.

Q. And, was Detective Dill also there?

A. Yes Sir.

Q. Okay. Did you agree to do anything for them at that time?

A. So they could wire me up.

Q. And, did they wire you up?

A. They did.

Q. You talking about sound, like recording?

A. Recording.

Q. Okay. And what did you do then?

A. I went back over to the funeral home where McDuffie was.

Q. What were you supposed to do?

A. See if I could get him to give me some of the money or something.

BY MR. FREEMAN: Now, that is hearsay. What were you suppose to do is getting around the hearsay violation of Rule 801 and 802 of the Texas Rules of Criminal Evidence.

BY THE COURT: Objection is overruled.

Appellant claims that Davis' response was harmful hearsay testimony because, "by and through such hearsay, *Dill* and unnamed *police officers* testified; and, such testimony placed an official stamp of approval on *Davis'* surreptitious interrogation of Appellant while cooperating with *Dill* and unnamed *police officers*." We find no harm in Davis' response in that he had just testified that Detective Dill and some other police personnel had "wired" him up. It is obvious that the operation met with police approval. Furthermore, we find Davis' response was not the type of "backdoor hearsay" found repugnant by the Court of Criminal Appeals in *Schaffer v. State*, 777 S.W.2d 111, 114 (Tex.Crim. App.1989), as relied on by appellant. In the instant case, we cannot find as an "inescapable conclusion" that Davis' response was being used by the State to prove statements made outside the courtroom. Davis' response appears to be what he personally thought his assignment to be. While this may have indeed been what the police personnel told Davis to do, we do not see Davis' response to be an attempt by the State to "circumvent the hearsay prohibition through artful questioning designed to elicit hearsay indirectly." *Id.* Furthermore, appellant's complaints do not indicate that any substantial rights were affected by the admission of Davis' testimony. TEX. R.CRIM.EVID. 103(a)[6]. Point of error nineteen is overruled.

 Point of error twenty avers, "The trial court committed reversible error by denying and overruling appellant's ob-

jection to Ernest Reescano's testimony, 'He [Dwight McDuffie] told me that Mrs. Jones wanted the man killed because she had—'...." Appellant argues, "Such hearsay was harmful because, by and through such hearsay, *Sallie Mae Jones* testified that *she* wanted Louis Jones, Jr., killed." In support of this rather conclusory statement, appellant cites us to TEX. R.CRIM.EVID. 103(a). Appellant, again, does not supply us with any case authority interpreting Rule 103(a) involving a similar testimonial situation where a "substantial right" of the accused was affected. We feel that the complained of response by Reescano is admissible as an "admission by party-opponent" under TEX.R.CRIM.EVID. 801(e)(2)(A). Reescano was not testifying to any statement made by Mrs. Jones, but to appellant's then state of mind with regard to the reason for appellant's recruitment of individuals to kill the victim. Such testimony is also permitted as an exception to the hearsay rule under TEX.R.CRIM.EVID. 803(3)[7]. Point of error twenty is overruled.

Point of error twenty-one states, "The trial court committed reversible error by overruling and denying appellant's motion for mistrial as a result of the jury's note on defense objections." The record reflects that during the middle of the trial, the jury sent a note to the trial court requesting clarification as to "whether the Prosecutor has the same rights to object as the Defense Counsel"? The trial court's written answer to the jury was, "Both sides have the same rights to object." TEX.CODE CRIM. PROC.ANN. art. 36.27 (Vernon 1981) explicitly provides for written communication between the jury and the trial court.[8] Article

---

6. TEX.R.CRIM.EVID. 103(a) provides, in pertinent part:

 **(a) Effect of erroneous ruling.** Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected,....

7. TEX.R.CRIM.EVID. 803(3) permits the admission of the following testimony over a hearsay objection:

 **(3) Then existing Mental, Emotional, or Physical Condition.** A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling,

pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.

8. Article 36.27 provides, in pertinent part:

 When the jury wishes to communicate with the court, it shall so notify the sheriff, who shall inform the court thereof. Any communication relative to the cause must be written, prepared by the foreman and shall be submitted to the court through the bailiff. The court shall answer any such communication in writ-

36.27, as we read it, appears to require the trial court to answer any communications it receives from the jury. The record reflects no objection by appellant at trial with regard to the procedure used by the trial court in responding to the jury's note.

Appellant's argument is as follows: "Inasmuch as such *'point of law'* was conjured up from minds who had resolved that Appellant possessed exclusive rights 'to object' during trial of this cause, such minds had exceeded *Article 36.13's* bounds!" We are unable to see how TEX.CODE CRIM.PROC. ANN. art. 36.13 (Vernon 1981) supports any complaint appellant has under this point of error.[9] At any rate, appellant has failed to provide us with any specific case law in support of his conclusory arguments of error, or in support of his general references to "Article 38.05," and "Tex. Const. art. I, sec. 10; TEX.CODE CRIM.PROC.ANN. art. 1.05 (Vernon 1984)." We certainly find no "such argument of facts and law as will enable the court to decide" the instant point of error. TEX.R.APP.P. 74(p). *See also,* TEX.R.APP.P. 74(f). Point of error twenty-one is overruled.

Point of error twenty-two states, "The trial court committed reversible error by overruling and denying appellant's objection to the trial court answering the jury's note on defense objections." The distinction between this point and point of error twenty-one is that here appellant argues that Article 36.22 applies instead of Article 36.27. Appellant's reliance on TEX.CODE CRIM.PROC.ANN. art. 36.22 (Vernon 1981) is misplaced. Article 36.22 prohibits individuals from being present with a jury while it deliberates, and prohibits individuals from conversing with a juror about the case on trial unless the trial court so permits. *See Liveoak v. State,* 717 S.W.2d 691, 699–700 (Tex.App.—San Antonio 1986), *pet. ref'd,* 741 S.W.2d 451 (Tex.Crim.App.1987). Point of error twenty-two is overruled.

Point of error twenty-three provides, "The trial court committed reversible error

by overruling appellant's objection to Ernest Reescano's testimony, 'He [Dwight McDuffie] said, that Mr. [Willie] McDuffie say he figured I was wired up.'" As we see no discernable difference in the particular type of testimony complained of here and in point of error twenty, we overrule point of error twenty-three based on our discussion of point of error twenty.

Point of error twenty-four states, "The trial court committed reversible error by denying 'Accused (sic) Second Motion To Suppress Contents of Intercepted Wire or Oral Communications and the Evidence Derived From Such Communications.'" We overrule this point of error as we see no discernable difference in it from the issues raised in points of error eight and fifteen.

■ Point of error twenty-five complains, "The trial court committed reversible error by finding Sharon Deffebaugh was not the so-called 'common-law' spouse of appellant." Appellant argues, "The record affirmatively establishes Deffebaugh was Appellant's so-called 'common-law' spouse over the above-designated period. Error resulted from the trial court finding otherwise; ...." Contrary to appellant's assertion, the record is at best inconclusive as to the marital status of appellant and Deffebaugh. Our examination of the testimony of appellant and Deffebaugh alone bears out the fact that both had denied any sort of marital relationship with the other during interviews with the State's attorney and at Grand Jury appearances.

■ TEX.R.CRIM.EVID. 504 controls claims of spousal privilege. The existence of a "common law" relationship is a question of fact. *See Aguilar v. State,* 715 S.W.2d 645, 647 (Tex.Crim.App.1986); *Reece v. State,* 772 S.W.2d 198, 200 (Tex. App.—Houston [14th Dist.] 1989, no pet.). TEX.R.CRIM.EVID. 104(a) provides that *the court* shall determine preliminary questions regarding, *inter alia,* the existence of a privilege. *See also, Casillas v. State,*

---

ing, and before giving such answer to the jury shall use reasonable diligence to secure the presence of the defendant and his counsel, ...

**9.** Article 36.13 provides:

Unless otherwise provided in this Code, the jury is the exclusive judge of the facts, but is bound to receive the law from the court and be governed thereby.

733 S.W.2d 158, 168 (Tex.Crim.App.1986), *appeal dismissed,* 484 U.S. 918, 108 S.Ct. 277, 98 L.Ed.2d 238 (1987). The trial court's ruling will not be reversed absent an abuse of discretion. *Reece, supra* at 201; *see also, Smith v. State,* 683 S.W.2d 393, 405 (Tex.Crim.App.1984). In the instant case, the testimony of the various witnesses, including that of appellant and Deffebaugh, was conflicting at best, ranging from an absolute agreement to *be* married, to an agreement to *get* married, to no representation of marriage at all. As such, we cannot say that the trial court abused its discretion in finding that Sharon Deffebaugh was not the common law wife of appellant and therefore not entitled to exercise the privilege provided by Rule 504(2). Thus, no error attached to the fact that Deffebaugh invoked her spousal privilege in the presence of the jury as she was not entitled to the privilege based upon the trial court's ruling. *Compare, Coffey v. State,* 796 S.W.2d 175, 177 (Tex.Crim.App. 1990). Point of error twenty-five is overruled.

Points of error twenty-six and twenty-seven state, respectively, "The trial court committed reversible error by not considering appellant's 'Motion To Recuse' filed on 07 July 1988." "The trial court committed reversible error by denying appellant's 'Motion To Disqualify' filed on 07 July 1988." We overrule both of these points of error as appellant makes no discernable distinction between these points and the issues raised in points of error three and four.

Point of error twenty-eight provides, "The trial court committed reversible error by admitting State's Exhibit No. seventy-eight over appellant's objections and overruling such objections." The record reflects that during appellant's cross-examination of State's witness Ernest Reescano, appellant played the contents of three cassette tapes before the jury. These tapes contained conversations involving Reescano and appellant. Appellant did not formally introduce the tapes into evidence. Later during the trial, the State attempted to introduce the tapes into evidence as State's Exhibit 78. The specific objections made by appellant to the trial court were based on bolstering, hearsay, and the denial of "confrontation and cross-examination of the witness involved, . . . ."

On appeal, however, appellant's claims of error are grounded in "the use before the jury rule," TEX.R.CRIM.EVID. 106, which deals with the introduction of the remainder of related writings or recorded statements, and TEX.R.CRIM.EVID. 107, which is the rule on optional completeness. We find that appellant's objections at trial differ from his complaints on appeal. As such, appellant has preserved nothing for review. *Sterling, supra,* 800 S.W.2d at 521. Point of error twenty-eight is overruled.

Point of error twenty-nine complains, "The trial court committed reversible error by denying accused's Motion For Mistrial: 608(b)." Appellant argues that the State improperly attacked the credibility of Sallie Mae Jones in violation of TEX.R.CRIM.EVID. 608(b) by eliciting testimony regarding the "Memorial Day incident." Rule 608(b) provides: "(b) **Specific Instances of Conduct.** Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in Rule 609, may not be inquired into on cross-examination of the witness nor proved by extrinsic evidence." In the instant case, we are unable to locate any testimony before the jury where Sallie Mae Jones is identified as having been responsible for the "Memorial Day incident." Appellant does not direct our attention to any such testimony. We find, therefore, no violation of Rule 608(b). Point of error twenty-nine is overruled.

Point of error thirty contends, "The trial court committed reversible error by denying accused's Motion For Mistrial." Again, appellant revisits issues raised in points of error eight and fifteen. Here, however, appellant relies on TEX.CODE CRIM.PROC. ANN. art. 2.18 (Vernon 1981) as authority.[10]

---

**10.** Article 2.18 provides:

When a prisoner is committed to jail by warrant from a magistrate or court, he shall be placed in jail by the sheriff. It is a violation of the duty on the part of any sheriff to permit a defendant so committed to remain

Appellant does not provide any case authority discussing how Article 2.18 even remotely relates to the admissibility of taped conversations. This point, therefore, is overruled as being inadequately briefed. *Vuong, supra,* 830 S.W.2d at 940. *See* TEX.R.APP.P. 74(d) and (f).

■■■ Points of error thirty-one and thirty-two declare, respectively, "The trial court committed reversible error by overruling appellant's objection to omission of an instruction in the trial court's charge to the jury that Joe Oliver Davis was an accomplice." "The trial court committed reversible error by overruling appellant's objection to omission of an instruction in the trial court's charge to the jury that Ernest Reescaño was an accomplice." The record reflects that appellant wanted the jury instructions to reflect that both Davis and Reescano were accomplices "as a matter of law." The trial court overruled this request. A trial court must instruct that a witness is an accomplice as a matter of law only when the evidence clearly shows that the witness is an accomplice as a matter of law. *Marlo v. State,* 720 S.W.2d 496 (Tex. Crim.App.1986). Indeed, when there is a question from the evidence whether a witness is an accomplice witness, it is then proper to submit that fact issue to the jury, and this is sufficient even though the evidence appears to preponderate in favor of the conclusion that the witness is an accomplice witness as a matter of law. *Gamez v. State,* 737 S.W.2d 315, 322 (Tex.Crim.App. 1987).

In the instant case, the evidence reflects that following appellant's solicitation of Davis, Davis informed his (Davis') parole officer and thereafter Davis agreed to be "wired up" with a body microphone in hopes that appellant would make some incriminating statement to Davis. The record further reflects that when appellant learned that Davis was working with the police, appellant ceased the solicitation of Davis. With regard to Reescano, the evidence reflects that appellant asked Reesca-

no on several occasions if he (Reescano) would like to make some extra money by "knocking off a man." On one occasion $2000 was mentioned by appellant and Reescano was taken to see the victim's home. Although Reescano testified that he did consider carrying out the murder, appellant came to him several days later and told Reescano that he (appellant) had found someone else to do the job and that Reescano did not have to go.

■■■ An accomplice witness is one who participated with another before, during, or after commission of a crime. *Villarreal v. State,* 708 S.W.2d 845, 847 (Tex. Crim.App.1986). A person is an accomplice witness if he can be prosecuted for the same offense with which the accused is charged. *Id.* A person is not an accomplice witness just because he knew of the crime and failed to disclose it or even concealed it. *Id.*

Considering the evidence before us, we cannot say that either Davis or Reescano was an accomplice as a matter of law. The trial court, therefore, properly placed those fact questions before the jury by way of the jury instructions. Points of error thirty-one and thirty-two are overruled.

Points of error thirty-three and thirty-four complain of portions of the State's initial argument to the jury during the guilt/innocence portion of the trial as appellant's objections in both instances were overruled by the trial court. In the first instance, the record reflects the following argument by the State:

BY MR. TRAPP (the State):

As you recall, we first called Patricia Jones to the stand. She was the daughter-in-law of the victim, Mr. Louis Jones, Jr. She testified that she was married to Mr. Carl Jones, that they resided in a home behind the house of the victim, Mr. Louis Jones, Jr.

Just from various things that her testimony pointed out, I believe that we can and I have seen, from that, is that they

out of jail, except that he may, when a defendant is committed for want of bail, or when he arrests in a bailable case, give the person

arrested a reasonable time to procure bail; but he shall so guard the accused as to prevent escape.

seem to be hard-working people, asfaras (sic) Patricia and Carl.

BY MR. FREEMAN (for appellant):

Objection, bolstering the credibility of the witness to unsworn facts and testimony not in evidence.

BY THE COURT:

Defendant's objection is overruled.

Appellant argues that the above comment by the State "constituted unsworn, purely personal opinion testimony of the State." Appellant also claims such comment was not a logical deduction from the evidence.

The second instance occurred moments later as the State attempted to summarize the testimony of its ballistics expert. The exchange was as follows:

BY MR. TRAPP:

I believe the testimony will reflect that his statement, that they were fired from the same type of weapon.

BY MR. FREEMAN:

Objection, that was not his statement, and that is going outside the record again, misleading inference in violation of the jury's right to consider facts not in evidence, and places new and harmful facts before the jury that is not in evidence.

BY THE COURT:

Objection overruled.

Here, appellant argues that there "was absolutely no testimony that 'they were fired from the same type of weapon.'"

 The general rule is that proper jury argument falls into four well-defined categories of discussion: (1) a summation of the evidence; (2) reasonable deductions from the evidence admitted for consideration by the jury; (3) a rejoinder to argument by opposing counsel; and (4) a plea for law enforcement. *Harris v. State,* 784 S.W.2d 5 (Tex.Crim.App.1989), *cert. denied,* 494 U.S. 1090, 110 S.Ct. 1837, 108 L.Ed.2d 966 (1990). Furthermore, counsel is generally afforded wide latitude in drawing inferences from the record, as long as such inferences are reasonable and offered in good faith. *Cantu v. State,* 842 S.W.2d 667, 690 (Tex.Crim.App.1992) (cert. filed);

*Denison v. State,* 651 S.W.2d 754, 761–762 (Tex.Crim.App.1983).

 In the instant case, the record reflects that Patricia Jones testified that she was employed as a cardio-pulmonary technologist at Northeast Medical Center Hospital in Humble, Texas, and Carl Jones testified that he was self-employed in the trucking business. We believe that the State's inference that the Joneses were both hard-working people was reasonable from the testimony of Carl and Patricia Jones. Point of error thirty-three is overruled.

 As to the complaint of the State's comment on the testimony of the ballistics expert, the record reflects the following testimony of Russell Johnson, the Department of Public Safety ballistics expert, on direct examination by the State:

Q. (the State) And, specifically now, I direct your attention back to State's Exhibit Number Sixty–One, and those two bullets that were submitted by the San Jacinto County Sheriff's Department, and ask you did you perform any type of comparison test with respect to that weapon?

A. (Mr. Johnson) Yes Sir, I did.

Q. Okay. And what were your findings with respect to the comparison?

A. We were unable to determine if State's Exhibit Number Sixty–One was fired from the submitted Smith and Wesson revolver.

Q. Okay. Does that finding mean that you were saying that they were absolutely not fired by that weapon?

A. No Sir, not at all. They possibly could have been fired from the weapon. But, the test bullet fired from the weapon had a general rifle characteristic of the right five, which is the same general rifling characteristic of the evidence bullet.

Q. So, they had, the basic rifling characteristics were similar to those produced by the weapon?

A. Yes Sir, the same general rifling characteristics.

Again, we find that the State's argument that the expert testified that the test bullet was fired from "the same type of weapon" as the bullet taken from the body of the victim was a reasonable inference from Mr. Johnson's testimony that both bullets had the same general rifling characteristics. Point of error thirty-four is overruled.

■ Point of error thirty-five reads, "The trial court committed reversible error by denying appellant's motion for mistrial as a result of the State's argument to the jury, 'I don't like the way race has crept into this case.' " The record reflects that the trial court sustained appellant's objection to the complained of portion of the State's final argument in the guilt/innocence portion of the trial. The trial court, however, denied appellant's request for a mistrial. We find no error in the trial court's denial of the mistrial request in that the State's argument was a proper rejoinder to argument by appellant' counsel. *Harris, supra,* 784 S.W.2d at 12. The record before us reflects the following portion of appellant's counsel's closing argument:

Don't go around here, Walter Pink, you read what people—they talk about racism. They talking about all white juries. It is a fact, but it don't mean you are less honorable. That means, you raise up to the challenge and don't be a party to this mess, said well, hell, this is a community composed of everything, I wonder why does it close, I am to lead down some kind of railroad track because we all white, we are going to stick together. This ain't what I promised Mr. Pink. I am going to do what I told him, and I told Dwight that I would give you a fair trial, Dwight I don't care what color you are. I believe that, When (sic) I talk about, talk about, an all white jury, Mr. Pink is a racist, but I didn't. Well, you understand what I am talking about because you mean it, I am a racist, you kick my butt you are a racist and I kick your butt, and you holler. That ain't about nothing. That ain't about nothing. I am going to holler every time you step on my feet. I am going to holler, and scream, and I don't care nothing about

you liking it or not. I am going to give you all for mine.

The above as well as other parts of appellant's closing argument, not to mention the flavor of a great many of appellant's objections during the course of this trial, were sprinkled with a generous portion of racial innuendo. To object that the State's comment in its final argument was "a personal opinion of the process, and it is not relevant, and it is an improper jury argument," is simply wrong based upon the record we have before us. Again, it was a proper response to appellant's preceding argument. Being a proper jury argument, there was no need for the jury to disregard same and certainly no need for a mistrial to be declared. Point of error thirty-five is overruled.

■ Point of error thirty-six proclaims, "The trial court committed reversible error by overruling appellant's objection to the State's argument to the jury, 'I don't have any faults with that. I don't have any problems with that. I am not ashamed of anything they said or didn't say in this courtroom, whatever—.' " The record reflects that the complained of comments occurred during the State's final argument to the jury in the guilt/innocence portion of the trial. The comments were part of a general discussion of the credibility of the State's witnesses and how said witnesses held up to vigorous and harsh cross-examination by counsel for appellant. Appellant argues, however, that the State's comments were "unsworn, purely personal opinion testimony of the State" in an effort to bolster the credibility of key witnesses Davis, Lyles, Reescano, and McGowen, among others.

We again find the State's comments to be a proper response to appellant's previous closing argument to the jury. The record before us reflects that appellant's counsel resorted to vicious personal attacks on virtually all of the State's witnesses. Typical of such attacks is the following:
... In passing upon their credibility and the weight to be given their testimony. I submit credibility is zero, clearly zero. Wait, zero? Below zero. That kind of

scum, you get a hose, I am talking about a fire hose, you wash them out of the Courtroom as fast as possible, into the gutter so they can slide right on down into the internal support system of this County, and he is on out into the penitentiary with that kind of scum.

It was reasonable trial strategy for appellant to attempt to discredit the State's witnesses by calling into question their credibility and motives for testifying for the State. When appellant thereafter reminds the jury in closing argument of the flaws, inconsistencies, and total lack of integrity of the State's witnesses, the State is permitted to "stick up" for said witnesses during its final argument by attempting to rehabilitate them in the eyes of the jury. Such an argument by the State is, again, a proper rejoinder to argument made by appellant's counsel. *Harris, supra,* 784 S.W.2d at 12. Point of error thirty-six is overruled.

Point of error thirty-seven provides, "The trial court committed reversible error by overruling appellant's objection to the State's argument to the jury, 'And, if she could have refuted all of that, Davis, Reescano, McGowen,—.' " The record reflects that the comment complained of by appellant occurred during the State's final argument to the jury in the guilt/innocence portion of the trial. The record further reflects that following a finding by the trial court that Sharon Deffebaugh was not the spouse of appellant, and therefore not entitled to assert the spousal privilege of Rule 504(2)(a), the State called Deffebaugh to testify. Ms. Deffebaugh, after being granted testimonial immunity by the trial court, again refused to testify and was found to be in contempt of court. The trial court ordered her jailed for ten days and assessed a $500 fine.

It is clear from the context of the portion of the State's argument under consideration that the "she" referred to by the State was Sharon Deffebaugh. Recall that during appellant's closing argument, appellant's counsel aggressively called into question the credibility of the State's witnesses, especially Davis, Reescano, McGowen, and

Lyles. The specific comment complained of here was apparently an attempt by the State to somewhat rehabilitate these witnesses by submitting to the jury that if Davis, Reescano, and McGowen had indeed been lying about appellant's solicitation of each of them to murder the victim then appellant could have called Deffebaugh to testify that no such solicitation occurred as several witnesses testified to the fact that Deffebaugh was present during some of the meetings when plans for the murder were discussed.

As a general rule, the State may comment on the failure of a defendant to call witnesses. *Montoya v. State,* 744 S.W.2d 15, 36 (Tex.Crim.App.1987), *cert. denied,* 487 U.S. 1227, 108 S.Ct. 2887, 101 L.Ed.2d 921 (1988). With regard to the State's comment that encompasses the invocation of the spousal privilege by the witness-spouse, Rule 504(2)(a) allows the State to comment on the failure of the defendant to call his or her spouse, when "other evidence indicates that the spouse could testify to relevant matters." *Johnson v. State,* 803 S.W.2d 272, 282 (Tex. Crim.App.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2914, 115 L.Ed.2d 1078 (1991), *overruled on other grounds,* 815 S.W.2d 681, 685 (Tex.Crim.App.1991). This is an exception to Rule 513 which prohibits comment by judge or counsel on other claims of privilege contained in Article V of the Texas Rules of Criminal Evidence. This exception is permitted because the State is not permitted to call a defendant's spouse, and such inability to call the spouse might allow the jury to draw an inference adverse to the State's case. *Johnson, supra.* In the instant case, the trial court did not err in overruling appellant's objection as Rule 504(2)(a) permits such comments. Point of error thirty-seven is overruled.

Point of error thirty-eight avers, "The trial court committed reversible error by overruling appellant's objection to the State's argument to the jury, 'It doesn't say that there has got to be other evidence that establishes the defendant's guilt independently, of the accomplice witness, but, it must tend to connect the defendant to the

crime.'" The record reflects that the comment complained of occurred during the State's final argument to the jury in the guilt/innocence portion of the trial. The full portion of the State's argument, including the alleged improper portion, is as follows:

BY MR. PRICE:

One final topic. What corroborating evidence is there? The rule, of course, is quite straight forward. It says that you can't convict on an accomplice witness alone. You have been told that Calvin McGowen is an accomplice witness. You can't convict on his testimony, if you believe it verbatim, but, what else does the rule say. It says, there must be other evidence that tends to connect the Defendant to the crime. It doesn't say that there has got to be other evidence that establishes the Defendant's guilt independently, of the accomplice witness, but, it must tend to connect the Defendant to the crime, and I want to hurriedly go over some things that I feel—

BY MR. FREEMAN:

Misstatement of the law, not only incorrect, but, the jury must believe that evidence that tends to connect.

BY THE COURT:

Overrule the objection.

TEX.CODE CRIM.PROC.ANN. art. 38.14 (Vernon 1979) provides:

A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence *tending to connect* the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense. (emphasis ours)

The rule clearly permits corroboration from evidence merely "tending to connect" the accused to the crime in order to sustain a conviction. The rule does not require the corroborating evidence to rise to the level sufficient in and of itself to prove each essential element of the offense charged. *Brown v. State*, 672 S.W.2d 487, 488 (Tex. Crim.App.1984). In the instant case, we read the portion of the State's argument at issue to be an accurate interpretation of Article 38.14. *See also, Cox v. State*, 830 S.W.2d 609, 611 (Tex.Crim.App.1992). There was no error in overruling appellant's objection. Point of error thirty-eight is overruled.

■ Point of error thirty-nine proclaims, "The trial court committed reversible error by overruling appellant's objection to the State's argument to the jury, 'I think you are going to find that it is clear and it is convincing and it is strong. Your verdict can be—'." The portion of the State's final argument to the jury of which appellant now complains occurred during the guilt/innocence portion of the trial and is set out in pertinent part as follows:

No one come (sic) in here and try to bamboozle you or to bring you any kind of fake evidence. There is no vendetta, there is no evidence of it. There is no evidence of any kind of a political thing or anything of that nature, and your job, and I know, I am not going to set up here and tell you what it is, it is quite simply to look at the evidence, what came in, not what I said or not what Walter Pink said, but, the evidence, and you look at the hard evidence as you heard it and as you remember it, and I think you are going to find that it is clear and it is convincing and it is strong. Your verdict can be—

BY MR. FREEMAN: Objection, misstatement of the law, it is not clear, convincing, strong, is not relevant to the Court's charge contrary to the Court's charge beyond a reasonable doubt.

BY MR. PRICE: I will get to that in a minute, Counsel, if you will give me a second.

BY THE COURT: Objection overruled.

We feel that appellant's characterization of the State's remark as a misstatement of the burden of proof is obviously misplaced. It is clear that the State was merely emphasizing the strength and clarity of the State's evidence in response to the attacks by appellant's counsel during their closing remarks. Again, as in points of error thirty-five and thirty-six, we find the State's remark falls into the category of proper rejoinder to argument of opposing counsel.

*Harris, supra,* 784 S.W.2d at 12. Point of error thirty-nine is overruled.

Point of error forty complains, "The trial court committed reversible error by overruling appellant's objection to the trial court's comment to the jury, 'All of the exhibits that were admitted will be brought into you'." The record reflects that after final arguments had concluded at the guilt/innocence portion of the trial, the trial court made the following statement to the jury:

> Ladies and gentlemen of the jury, at this time let me admonish you again that you are not to consider what any of the attorneys told you during their Voir Dire, or during their argument as evidence. You didn't hear any evidence from Mr. Trapp, Mr. Pink, Mr. Freeman, or Mr. Price, this morning. You heard all of the evidence before you left last Friday. At this time, you are to retire in the jury room and begin deliberations. Mrs. Farmer, I will ask you to stay out here and come up before the bench. Again, you are not to consider what either of them told you during the argument as any evidence and you will take the charge in with you. All of the exhibits that were admitted will be brought into you. You all can be excused to go back into the jury room. Your lunch is ready.

After the jury left the courtroom, appellant objected to the trial court telling the jury that all of the exhibits would be brought in to them as TEX.CODE CRIM.PROC.ANN. art. 36.25 (Vernon 1981) provides that the jury must first request an exhibit prior to being provided with it by the trial court. Appellant argues that the trial court's statement was a comment on the evidence in violation of TEX.CODE CRIM. PROC.ANN. art. 38.05 (Vernon 1979).[11] Generally, to constitute reversible error a trial court's comment on the weight of admitted evidence must be such that it is reasonably calculated to benefit the State or to preju-

dice the rights of the defendant. *Marks v. State,* 617 S.W.2d 250, 252 (Tex.Crim.App. 1981). Appellant urges in his brief, "Such remarks were clearly calculated to benefit the State and prejudice Appellant's rights by prescribing that seventy (70) inculpatory and inflammatory State exhibits, including disputed State's Exhibit No. 78, the tape recording of Appellant and Ernest Reescano, and five (5) Defense exhibits dealing with Sallie Mae Jones and alcoholism, were critical to deliberations by the jury on the issue of Appellant's guilt." (emphasis deleted) How appellant can reasonably infer any bias or favoritism on the trial court's part for one side or the other from the sentence, "All of the exhibits that were admitted will be brought into you.", is beyond our understanding. The record reflects that appellant introduced several exhibits of his own into evidence. We find that the trial court's statement was value-neutral and favored neither the State nor appellant. Point of error forty is overruled.

Points of error forty-one and forty-two provide, respectively, "The trial court committed reversible error by overruling appellant's objection to the trial court's questioning and admonishing of juror no. one, Richard R. Burroughs, as a violation of Article 38.05." "The trial court committed reversible error by denying appellant's Motion For Mistrial as a direct result of the trial court's clandestine *rendez-vous* (sic) with juror no. one, Richard R. Burroughs." From the rather confusing rendition of events by appellant under the "STATEMENT OF FACTS" portion of point of error forty-one, appellant's basic complaint appears to center on the fact that a juror in the instant case, Richard Burroughs, a licensed attorney, met and conversed with the judge in the instant case concerning two clients of Mr. Burroughs with pending criminal charges. Apparently these two clients of Mr. Burroughs had no connection

---

11. Article 38.05 provides:
 In ruling upon the admissibility of evidence, the judge shall not discuss or comment upon the weight of the same or its bearing in the case, but shall simply decide whether or not it is

admissible; nor shall he, at any stage of the proceeding previous to the return of the verdict, make any remark calculated to convey to the jury his opinion of the case.

with the instant case in any way. Appellant argues that these meetings between Mr. Burroughs and the trial judge violated the judge's previous order that "[a]ll communications between the Court and the jury during the guilt-innocence and punishment hearing" be recorded.

Appellant argues that because he and his trial counsel were not immediately informed about the meetings between the trial judge and Mr. Burroughs, albeit regarding matters totally unrelated to the prosecution and trial of appellant, the trial court perpetrated a fraud on appellant. Appellant attempts to discuss how these events harmed him in the following portion of his brief:

> By concealing such fraud beforehand, the trial court *lead* Burroughs right on through revelation of such fraud so as to foreclose Appellant's right to object any (sic) interview with Burroughs. Appellant asserted immediately following such revelation, "[H]ad the Court made us aware that there had been a problem, not [sic] a problem that the Court interceded in this matter, *before we came in here, we would have never wanted to come in here on Mr. Burroughs* (record reference omitted). Remember, Burroughs wasn't just *any* juror! Burroughs was a lawyer with an on-going criminal practice who acknowledged on-going dealings with the State and the trial court (record reference omitted).

We must candidly admit that we do not understand what point appellant is attempting to make in the above quoted argument. Appellant certainly cannot claim surprise or deception regarding the fact that Mr. Burroughs was an attorney with a significant criminal law practice or the fact that Mr. Burroughs had extensive dealings with the trial court and the State because these facts were fully disclosed during the individual voir dire of Mr. Burroughs prior to the start of the guilt/innocence phase of the trial. Apparently appellant had no objection to Mr. Burroughs serving on the jury as the record reflects that appellant's counsel explicitly accepted Mr. Burroughs as a juror. Appellant has not referred us to any portion of the record before us

where there is evidence that at any of the meetings between the trial judge and Mr. Burroughs discussion of the instant case occurred. The mere fact that meetings took place between the trial judge and Mr. Burroughs regarding criminal matters unrelated to the instant prosecution and trial of appellant cannot now be elevated to some form of reversible error as appellant was placed on notice of such a possibility during the individual voir dire of Mr. Burroughs. As such, appellant has waived error, if any, with regard to this issue. Points of error forty-one and forty-two are overruled.

Point of error forty-three avers, "Appellant was deprived of a fair and impartial trial: active conduct of the state and the trial court." This point of error is essentially a complaint that the cumulative effect of some previous twenty-four points of error resulted in the denial of a fair and impartial trial of appellant. In light of the fact that all of appellant's previous forty-two points of error have been overruled an argument grounded in cumulative error based on prosecutorial and judicial misconduct must be overruled. *See Stoker v. State*, 788 S.W.2d 1, 18 (Tex.Crim.App. 1989), *cert. denied*, 498 U.S. 951, 111 S.Ct. 371, 112 L.Ed.2d 333 (1990). Additionally, this particular type of alleged error has been held to be improper and to present nothing for review. *Id.; Hollis v. State*, 509 S.W.2d 372, 375 (Tex.Crim.App.1974). Point of error forty-three is overruled.

██ Point of error forty-four contends, "Appellant was deprived of a fair and impartial trial: suppression of exculpatory and impeachment evidence on Texas Ranger Wesley Styles." Appellant's argument under this point of error centers on the trial court's refusal to order that the personnel file of Ranger Styles be turned over to appellant in order for appellant to "have an opportunity to ascertain whether those files contain exculpatory information that would help us *impeach* these witnesses, whether they would be *prejudice* [sic] and *biased*, and *falsify their testimony*." It is undisputed that Ranger Styles did not testi-

fy in this case. Although appellant uses the word "exculpatory" to describe the type of information possibly contained in Ranger Styles' personnel file, it is clear from appellant's argument that the sole purpose for the file was impeachment of Ranger Styles. A witness must testify to some fact before he can be impeached. *Thompson v. State,* 480 S.W.2d 624, 629 (Tex.Crim.App.1972). As Ranger Styles did not testify during the instant trial, appellant had no right to any alleged impeachment information regarding Ranger Styles. *See also,* TEX.R.CRIM.EVID. 607–609. Point of error forty-four is overruled.

Points of error forty-five and forty-six provide, respectively, "Appellant was deprived of a fair and impartial trial: unobjected to instruction authorizing conviction on theory not alleged in indictment—*'and Floyd Wyatt.'*" "Appellant was deprived of a fair and impartial trial: unobjected to instruction authorizing conviction on theory not alleged in indictment—*'intentionally.'*" Additionally, though point of error forty-eight is presented as, "The evidence was insufficient as a matter of law.", appellant's argument under point of error forty-eight is essentially a complaint of alleged trial court error with regard to the jury instructions during the guilt/innocence portion of the trial.

The record reflects several objections raised by appellant to the trial court's instructions to the jury. However, none of the errors alleged under points forty-five, forty-six, or forty-eight were raised by appellant at trial.

An appellant who seeks reversal on the basis of error in the charge must first demonstrate that error exists in the charge. *Almanza v. State,* 686 S.W.2d 157, 174 (Tex.Crim.App.1985) (opinion on rehearing); *Renfro v. State,* 827 S.W.2d 532, 534 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd). In points of error forty-five and forty-six, appellant argues that the trial court's inclusion in the application paragraph of the words "and Floyd Wyatt" and "intentionally" constitutes "egregious harm" to him in that said words were not included in the indictment and, therefore, the jury instructions authorized a conviction on a theory not alleged in the indictment.

With regard to the "and Floyd Wyatt" complaint of point of error forty-five, we find the wording to indeed be contained in paragraph one of the indictment which charges appellant with capital murder by remuneration. There was no error in including the words "and Floyd Wyatt" in the application portion of the jury instructions. Point of error forty-five is overruled.

With regard to the "intentionally" complaint of point of error forty-six, it is not at all clear that TEX.PENAL CODE ANN. sec. 19.03(a)(3) (Vernon 1989), on its face, requires a culpable mental state to be alleged as to the individual employed to commit the murder by the target defendant. At any rate, appellant's pretrial Motion To Quash reflects no objection to lack of culpable mental state in that portion of the indictment so that issue is waived. TEX.CODE CRIM.PROC.ANN. art. 1.14 (Vernon Supp. 1993).

The inclusion of a culpable mental state in the application paragraph of the jury instruction placed an additional burden on the State, not the appellant, as the jury was instructed that they could not convict unless each element of the offense was proven beyond a reasonable doubt. We certainly cannot say that requiring the State to prove that McGowen and Wyatt "intentionally" killed Louis Jones, Jr., as a result of being employed by appellant to do so was authorizing the jury to convict appellant on a different theory of culpability than alleged in the indictment. Trial courts are required to provide the jury with both an abstract statement of the law and an application of that abstract statement to the evidence in the case. *Riley v. State,* 830 S.W.2d 584, 586–587 (Tex.Crim.App. 1992). The trial court in the instant case took the cautious approach when presented with the facial ambiguity of Section 19.03 and required the State to prove that the murder of the victim was intentional on the part of appellant as well as on the part of McGowen and Wyatt. We cannot say that

**222** ■

the trial court erred in this regard. Point of error forty-six is overruled.

■ We reiterate that point of error forty-eight is not a typical complaint regarding the sufficiency of the evidence. As we read this point of error, appellant seems to presume that the trial court erroneously added the words complained of in points of error forty-five and forty-six to the application paragraph; that the trial court erroneously instructed the jury on the issue of whether Reescano and Davis were accomplices; and erroneously instructed the jury "on the burden of persuasion with respect to such fact issues." Appellant's argument continues that because of said errors in the jury instructions, a "correct" charge was not given to the jury. Citing *Boozer v. State*,[12] appellant concludes that "if the evidence does not conform to the *correct* instruction given, such evidence is insufficient as a matter of law to support the only verdict of "guilty" which was authorized by such *correct* instruction.... Appellant further submits that upon surgically excising such above described *incorrect* instructions, the evidence is insufficient as a matter of law to support the verdict of "guilty" authorized by the remaining instructions in this cause." Because our discussions under points of error thirty-one and thirty-two held that the trial court's accomplice witness instructions as to Reescano and Davis were correct, and our discussions under points of error forty-five and forty-six held the wording contained in the application paragraph was proper, appellant's presumption falls, and with it his point of error does also. As stated previously, the application paragraph of the trial court's instructions to the jury must clearly apply the law to the particular facts of the case. *Riley, supra.* In the instant case, based upon all of the testimony, but especially the testimony of Reescano, Davis, and Calvin McGowen, we again find that the instructions to the jury properly applied the law to the particular facts of the case, and that any rational trier of fact could have found each of the elements of the offense proven

beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Point of error forty-eight is overruled.

■ Point of error forty-seven declares, "The testimony of the accomplices was not corroborated by other evidence tending to connect appellant with the charged offense." Appellant again engages in a fatal presumption, to-wit: "Each of the State's substantive witnesses, Ernest Reescano, Joe Oliver Davis and Calvin McGowen, were accomplice witnesses." We must again refer back to our discussion of points of error thirty-one and thirty-two in which we analyzed the status of Reescano and Davis and concluded that they were not accomplices "as a matter of law." As such, their testimony could be used to corroborate the testimony of Calvin McGowen, who was indeed an accomplice witness. The gist of both Reescano's and Davis' testimony was quite similar to that of McGowen's; that appellant solicited them to kill a person who turned out to be the victim, Louis Jones, Jr.; that appellant had indicated to Reescano and Davis the location of the victim's home; that appellant indicated that he (appellant) would be getting a house and property that at the time was owned by the victim and Sallie Mae Jones; that appellant showed both Davis and Reescano a short pistol that resembled a thirty-eight calibre which appellant represented was to be the murder weapon. Additionally, Reescano, Davis and McGowen all testified that State's Exhibit 64, the pistol recovered by the police with the aid of McGowen, was similar to the pistol shown to them by appellant.

TEX.CODE CRIM.PROC.ANN. art. 38.14 (Vernon 1979) provides that a conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed. The corroborative evidence, however, need not directly link the accused to the crime or be sufficient in itself to establish guilt. *Erwin v. State*, 729 S.W.2d 709, 711 (Tex.Crim.App.1987); *Thompson v. State*, 691 S.W.2d 627, 631

---

12. 717 S.W.2d 608 (Tex.Crim.App.1984).

(Tex.Crim.App.1984), *cert. denied,* 474 U.S. 865, 106 S.Ct. 184, 88 L.Ed.2d 153 (1985). The focus of the inquiry, for appellate purposes, is on the non-accomplice testimony and physical evidence in order to ascertain if there is inculpatory evidence which *tends to link* the accused with the commission of the offense. We find that the testimony of Reescano and Davis in the instant case did indeed tend to link appellant with the commission of the offense in light of McGowen's testimony and other testimony and physical evidence. Point of error forty-seven is overruled.

Points of error forty-nine and fifty contend, respectively, "The trial court committed reversible error by overruling appellant's objection to Sallie Mae Jones' community estate as not relevant." "The trial court committed reversible error by overruling appellant's motion for a *Rule 104* hearing on whether Sallie Mae Jones was a co-conspirator." Under both points of error appellant argues that it was error for the trial court not to conduct a hearing in order to determine Sallie Mae Jones' status as a co-conspirator. Such a determination, appellant continues, is necessary *"before* any evidence regarding *that* alleged co-conspirator's motive is admissible." Appellant's sole case authority under both points is *Casillas v. State,* 733 S.W.2d 158, 168 (Tex.Crim.App.1986), *appeal dismissed,* 484 U.S. 918, 108 S.Ct. 277, 98 L.Ed.2d 238 (1987). The Court in *Casillas* did indeed discuss Tex.R.Crim.Evid. 104(a) [13] and co-conspirators. Appellant, however, entirely misinterprets *Casillas* as requiring a Rule 104(a)–type hearing to determine that a witness is a co-conspirator so as to preclude that witness's testimony.

▮ The Court in *Casillas* relied on the Fifth Circuit case of *United States v. James,* 590 F.2d 575 (5th Cir.), *cert. denied,* 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979) to aid them in interpreting the effect of Rule 104(a) as the federal rules of evidence also contain a similar rule. It is clear from the Court's discussion in *Casillas* that the issue to be determined in the Rule 104(a) hearing was the admissibility of *out-of-court statements by alleged co-conspirators.*[14] There is no rule of evidence or case law requiring the prior determination of a witness's status as a co-conspirator, or an accomplice for that matter, before the witness may testify to relevant matters of which that witness has personal knowledge. The fact that said witness may have some ulterior motive for testifying can be discovered by the opposing party through vigorous and open cross-examination.

▮ In the instant case, Mrs. Jones' testimony regarding the status and contents of the community estate appeared to be relevant with regard to what ultimately was proven to be the motive behind appellant's solicitation of various individuals to murder the victim, *viz:* appellant's expectation of receiving a house, land and property owned by the Joneses. As such the trial court did not err in denying appellant's motion for a Rule 104(a) hearing on Mrs. Jones' status as a co-conspirator, nor did the trial court err in permitting Mrs. Jones to testify as to her community estate as that was relevant evidence. *See* Tex. R.Crim.Evid. 401 & 402. Points of error forty-nine and fifty are overruled.

Having carefully examined all fifty of appellant's points of error and finding no merit in any of them, we affirm the judgment and sentence of the trial court.

AFFIRMED.

**13.** Rule 104 provides, in pertinent part:

 **(a) Questions of Admissibility Generally.** Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court, subject to the provisions of subdivision (b). In making its determination it is not bound by the rules of evidence except those with respect to privileges.

 **(b) Relevancy Conditioned on Fact.** When the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition.

**14.** *See* Tex.R.Crim.Evid. 801(e)(2)(E) as a possible source of appellant's confusion with regard to these last two points of error.