John Russell THOMPSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 68987.

Court of Criminal Appeals of Texas, En Banc.

Dec. 5, 1984.

Rehearing Denied Feb. 27, 1985.

Mark Stevens, David K. Chapman (court appointed), San Antonio, for appellant.

Sam D. Millsap, Jr., Dist. Atty. and Edwin E. Springer, Joseph W. Galenski and Edward F. Shaughnessy, III, Asst. Dist. Attys., San Antonio, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

ODOM, Judge.

After finding appellant guilty of capital murder the jury returned affirmative findings to the two special issues submitted under Art. 37.071(b), V.A.C.C.P., and punishment was assessed at death.

Appellant was charged with having intentionally caused the death of Mary Kneupper while in the course of committing and attempting to commit the offense of robbery upon her. Appellant raises seventeen grounds of error, including challenges to the sufficiency of the evidence at the guilt stage and on the punishment issues, jeopardy issues, and complaints about the jury charge, admissibility of evidence, suppression of evidence, and plea bargaining.

Christie Sparks Moore, an accomplice witness, testified that on May 21, 1977, she, appellant, and Fernando Guerrero discussed committing a robbery. After ob-

taining a gun, a .45 caliber automatic belonging to Moore's stepfather, which appellant manipulated and learned to operate, the group picked up a fourth person who supplied a bandana and a pair of sunglasses to be worn as a disguise. They drove in appellant's car to the office of the "Pioneer Stor & Lok" in San Antonio, where appellant stated he saw a woman counting money. Several cars were parked at Pioneer, and the group decided not to go in at that time. Shortly thereafter, appellant was stopped and cited by a police officer for impeding traffic on the interstate near Pioneer. The group then returned to Pioneer where appellant donned the disguise and entered the office, carrying the gun. Moore heard "a large bang" and appellant emerged from the office. The group drove away, and appellant stated he hadn't taken any money because there was none. He also said that the woman in the office had not taken him seriously and laughed at him when he first entered the office and pointed the gun at her. She subsequently fled the office area through a doorway and appellant jumped over the office counter in pursuit. The shot was fired as appellant tried to pull the victim back in to stop her flight.

The deceased was found lying in the open doorway of her apartment by a neighbor who heard the shot. The deceased's apartment and office were in the same building and were connected by a door. The medical examiner who performed the autopsy on the victim testified the death was caused by a gunshot wound to the neck. Stippling indicated the shot had been fired at close range. A firearms examiner testified the gun used by appellant had several safety devices, which must have been disengaged in order for the gun to fire.

■ In his first ground of error appellant contends "the evidence is insufficient to show, beyond a reasonable doubt, that appellant committed the murder intentionally." In determining sufficiency we will view the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Wilson v. State*, 654 S.W.2d 465; *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

Appellant asserts that the State bears a greater burden in proving the culpable mental state of "intent" in a capital case since "the language of V.T.C.A., Penal Code Sec. 19.03(a)(2) requires an intentional killing over and above the intentional killing set out in the (non-capital) murder statute." Thus appellant concludes "the State should not ... be allowed to rely on the presumption arising from the use of a deadly weapon." This contention is without merit. "Intentionally" is defined in V.T.C.A., Penal Code Sec. 6.03(a), and therefore has the same meaning whether used in V.T.C.A., Penal Code Sec. 19.02, the murder statute, or in V.T.C.A., Penal Code Sec. 19.03, the capital murder statute. It follows that the standard of review to determine the sufficiency of the evidence to show an *intentional* killing is the same under both murder and capital murder.

■ We further find the evidence to be sufficient to show that appellant intentionally caused the death of the deceased. A rational trier of fact could have inferred from appellant's acts of entering the office carrying a deadly weapon, pursuing the victim as she attempted to escape, shooting her at close range, and then fleeing the scene of the shooting, that appellant intended to cause the death of the deceased.

■ Appellant also points to testimony elicited by defense counsel on cross-examination of the accomplice witness, that appellant stated after the shooting that the gun had gone off accidentally, and that appellant started crying when he heard on the news that the woman he shot had died. This testimony does not affect our determination of the sufficiency of the evidence. The jury, as the trier of fact, was authorized to accept or reject any or all of this testimony. See *Valore v. State*, 545 S.W.2d 477, 480; *Ables v. State*, 519 S.W.2d 464. Therefore, appellant's first ground of error is overruled.

In four grounds of error appellant contends: the non-accomplice evidence is insufficient "to establish appellant's guilt beyond a reasonable doubt;" such evidence "does not tend to connect appellant to the offense beyond a reasonable doubt;" and the trial court erred in overruling two objections to the charge which were also premised on appellant's assertion that evidence independent of the accomplice witness testimony must establish guilt *beyond a reasonable doubt,* or at least tend to connect appellant to the offense *beyond a reasonable doubt.*

Art. 38.14, V.A.C.C.P., provides as follows:

"A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence *tending to connect* the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense." (Emphasis added).

■■■ It is well settled, however, that the corroborative evidence need not directly link the accused to the crime or be sufficient in itself to establish guilt. *Brown v. State,* 672 S.W.2d 487; *Paulus v. State,* 633 S.W.2d 827. The test to determine the sufficiency of the corroboration is to eliminate from consideration the evidence of the accomplice witness and then examine the testimony of other witnesses to ascertain if there is inculpatory evidence which *tends to link* the accused with the commission of the offense. *Brown v. State,* supra; *Meyers v. State,* 626 S.W.2d 778.

This same test is applied in determining the sufficiency of corroboration in capital cases. See e.g., *Mitchell v. State,* 650 S.W.2d 801; *McManus v. State,* 591 S.W.2d 505. Under this standard the non-accomplice testimony in the instant case is clearly sufficient: The victim's neighbor testified that after he heard a loud noise, he looked out and saw a white car speeding out of the driveway of Pioneer. Thereafter he saw the body of the deceased lying in the open doorway of her apartment. Officer Gauthier testified he stopped appellant's vehicle, a white or beige Pontiac, and issued him a

citation for impeding traffic on the interstate near Pioneer on May 21, 1977. Shortly after issuing the citation, the officer received a call about the shooting at Pioneer. Finally, Ronald Ash, an acquaintance of the appellant, testified that on the day after the shooting, appellant, the accomplice witness, and Guerrero came to Ash's home in appellant's white Pontiac. Appellant told Ash that on the previous day, "he had done a robbery, and they had had to shoot a woman." Appellant also stated "that they had tried to make a score and killed an old lady."

■■■ Appellant urges this Court to adopt a standard for reviewing the sufficiency of the corroboration in capital cases which would require the corroborating evidence alone to establish a defendant's guilt beyond a reasonable doubt or tend to connect the defendant to the offense beyond a reasonable doubt. We decline to do so. The "accomplice witness rule" in Art. 38.-14, supra, is a legislative creation not required by the common law, *Bailey v. State,* 271 S.W. 627, or as a matter of federal constitutional law. See e.g., *Caminetti v. United States,* 242 U.S. 470, 37 S.Ct. 192, 61 L.Ed. 442 (1917); *U.S. v. De Larosa,* 450 F.2d 1057 (3rd Cir.1971), cert. denied 405 U.S. 927, 92 S.Ct. 978, 30 L.Ed.2d 800 (1972). Since Art. 38.14 does not require the stricter standard of review proposed by appellant, appellant's grounds of error are overruled.

■■■ Appellant next contends the evidence is insufficient to support the jury's affirmative findings to the two punishment issues submitted under Art. 37.071(b), supra, whether the conduct of appellant that caused the death of the deceased was committed deliberately and with reasonable expectation that the death of the deceased would result, and whether a reasonable probability exists that appellant would commit criminal acts of violence constituting a continuing threat to society.

In determining the sufficiency of the evidence on these issues, we will take into consideration the evidence adduced at both

stages of the trial, see *Russell v. State*, 665 S.W.2d 771, and will view the evidence in the light most favorable to the verdict. See *Starvaggi v. State*, 593 S.W.2d 323; *Wilson v. State*, supra.

▪ Evidence adduced by the State at the punishment stage showed that appellant had three prior felony convictions: one in 1972 for theft, and two in 1974; one for theft and the other for burglary of a habitation. Appellant was paroled from the Texas Department of Corrections in February, 1977, some three months before the instant offense.

Christie Sparks Moore testified that on the same day but before the commission of the instant offense, she, appellant, and Guerrero intended to commit a robbery at a savings and loan but arrived after it had closed. At appellant's suggestion, they then drove to "at least four" apartment complexes searching for an apartment manager who could be robbed of cash rental receipts, but were deterred either by the absence of the managers or by the presence of too many witnesses. After driving by Pioneer the first time, they tried unsuccessfully to persuade a man walking along the highway to accept a ride so that they could rob him. While driving slowly next to the man on the highway, they were stopped and cited by a police officer for impeding traffic. Frustrated in their attempts, they returned to Pioneer Stor & Lok, where the instant offense occurred.

Larry Darling testified that he was hitchhiking in San Antonio in 1974 and was picked up by appellant and another person. Darling asked to be let out when appellant began driving away from the agreed-upon destination, and as he got out of the car, appellant attempted to speed away with Darling's backpack still in the car. Darling jumped back into the moving vehicle and appellant yelled at his companion to shoot him, but Darling successfully subdued the two and held them until the police arrived. A .22 caliber rifle was found in the vehicle.

Officer Seraw testified that on another occasion in 1974, he found a .22 caliber pistol in a car appellant had been driving, as well as several boxes of ammunition. Officer Weilbacher testified that four days before the instant offense was committed, he recovered a .32 caliber pistol from an automobile appellant was driving. Finally, Officer Randall testified he arrested appellant ten days after the commission of the instant offense in a Plano shopping center, and appellant admitted to having committed a burglary at a business in the center.

We find the evidence sufficient to support the jury's affirmative answers to both of the punishment issues submitted under Art. 37.071(b), supra. The jury could have rationally inferred from appellant's acts of pursuing the victim into her apartment after she fled from the office, and shooting her before she had a chance to leave the building, that such conduct was committed deliberately and with reasonable expectation that the death of the deceased would result. Contrary to appellant's assertion, one can infer from appellant's acts that he engaged in "the thought process which ... activate[d] the intentional conduct," thus showing deliberateness. *Fearance v. State*, 620 S.W.2d 577, 584. See *Milton v. State*, 599 S.W.2d 824.

▪ As to appellant's "future dangerousness," the evidence is equally ample. It is well settled that the circumstances of the offense itself, if severe enough, can sustain an affirmative answer to the second special issue submitted under Art. 37.071(b). *Russell v. State*, 665 S.W.2d 771; *Mitchell v. State*, 650 S.W.2d 801. In addition the evidence showed three prior felony convictions, a series of unsuccessful attempts by appellant to find a suitable robbery victim, appellant's repeated possession of firearms, and an unadjudicated burglary offense committed after the instant offense. Appellant's grounds of error are overruled. See *Brooks v. State*, 599 S.W.2d 312; *Starvaggi v. State*, supra; *Bodde v. State*, 568 S.W.2d 344.

▪ In three grounds of error appellant contends the evidence in appellant's first conviction for the same offense was also insufficient to show an intentional killing

and to support the affirmative answers to the punishment issues; and therefore, appellant's retrial should have been barred by double jeopardy. Appellant's first conviction for this offense was reversed on the basis of *Estelle v. Smith*, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981). See *Thompson v. State*, 621 S.W.2d 624.

On appeal from the first conviction, appellant did not challenge the sufficiency of the evidence to support the punishment issues, and his contention that the evidence was insufficient to show an intentional killing was overruled by the Court. Thompson v. State, supra. Appellant did not raise a plea of former jeopardy before the trial court, and has failed to include the record of the first trial in the record before us. We will nevertheless address these issues.

As noted above, on appeal from the first conviction for the instant offense, appellant's contention that the evidence was insufficient to show an intentional killing was overruled. Thompson v. State, supra. Appellant asks us to reconsider that holding. We decline to do so.

After reviewing the record of appellant's first trial, we find the evidence sufficient to support the jury's affirmative findings to both of the punishment issues submitted under Art. 37.071(b), supra, at that trial. The evidence at the first trial showing appellant's deliberate conduct in causing the death of the deceased was essentially the same as adduced at the instant trial and summarized above. See *Thompson v. State*, supra. Thus the jury could have reasonably inferred from such conduct that appellant acted deliberately and with reasonable expectation that the death of the deceased would occur.

Appellant contends that the evidence at the first trial as to "future dangerousness" was insufficient because unlike the instant trial the state did not present evidence of the confrontation with Larry Darling. The state also did not present evidence regarding the burglary allegedly committed by appellant after the instant offense. At the first trial, however, the state called Dr. Betty Lou Schroeder, a clinical psycholo-

gist, and Dr. James Grigson, "a medical doctor, specializing in psychiatry." Grigson's testimony, although improperly admitted, *Thompson v. State*, supra, may be considered in determining the sufficiency of the evidence. *Porier v. State*, 662 S.W.2d 602.

Schroeder interviewed appellant and conducted several psychological tests. She opined that appellant had an "antisocial personality," was dangerous, and would probably commit criminal acts of violence in the future. Grigson testified he met with appellant on two occasions, and found no indications of remorse or guilt. He characterized appellant as a sociopath "of the most severe type" and stated that appellant would be "a continuing threat to whatever society he happens to be in in the future." Such testimony, together with the evidence of appellant's prior convictions, and the circumstances of the offense, is sufficient to sustain the jury's affirmative answer to the second special issue submitted under Art. 37.071(b), supra, at the first trial. Appellant's grounds of error are overruled.

Appellant's next contention is that the trial court erred by admitting at the punishment phase uncorroborated accomplice testimony as to extraneous offenses committed by appellant. It is well settled that evidence of unadjudicated extraneous offenses is admissible at the punishment stage of a capital murder trial. E.g., *Williams v. State*, 622 S.W.2d 116; *Rumbaugh v. State*, 629 S.W.2d 747; *Brooks v. State*, supra. It is also settled that the corroboration requirements of Art. 38.14, supra, are inapplicable to the testimony of accomplice witnesses as to extraneous offenses, at the punishment stage of a capital murder trial. *Mitchell v. State*, 650 S.W.2d 801, 812; *May v. State*, 618 S.W.2d 333, vacated on other grounds sub nom *May v. Texas*, 454 U.S. 959, 102 S.Ct. 497, 70 L.Ed.2d 374, aff'd on remand, 632 S.W.2d 751. Appellant asks us to overrule our prior decisions. We decline to do so.

Appellant asserts that allowing the State to present evidence of unadjudicated of-

**634**

fenses at punishment, especially through uncorroborated accomplice testimony, renders Art. 37.071, V.A.C.C.P., unconstitutional as applied, because the state is in effect given "an unfair and powerful evidentiary advantage which unduly encourages the jury to find in favor of the death penalty."

As noted above, however, the accomplice witness rule set out in Art. 38.14, supra, is not constitutionally mandated, and therefore, it is up to the legislature to expand or restrict its scope. *Bailey v. State,* supra. See also *Caminetti v. United States,* supra; *U.S. v. De Larosa,* supra. Furthermore, we do not agree with appellant's contention that the failure to require the corroboration of accomplice testimony as to unadjudicated offenses at punishment "encourages the jury to give undue weight to aggravating circumstances." In no way is the defense precluded from bringing before the jury "whatever mitigating circumstances relating to the individual [as] can be adduced." See *Jurek v. Texas,* 428 U.S. 262, 276, 96 S.Ct. 2950, 2958, 49 L.Ed.2d 929 (1976). Appellant's ground of error is overruled.

■ In his next ground of error appellant asserts that "the trial court erred by denying appellant's requested charge at the guilt-innocence phase of the trial," regarding the competency of the State's witness, Ronald Ash. On cross-examination, Ash admitted to having been a narcotics user at the time when appellant confessed to him of having committed the robbery, and admitted that he had taken methadone two hours before testifying at trial.

Appellant's requested charge reads in pertinent part:

"if you find and believe from the evidence that the witness Ronald Ash was, because of his use of narcotic drugs, in an insane condition of mind at the time he was offered as a witness or at the time when the events happened of which he was called to testify, or if you believe from the evidence that, because of his use of narcotic drugs, the witness Ronald Ash did not possess sufficient intellect to

relate the transactions with respect to which he was interrogated, then you cannot and must not consider the testimony of Ronald Ash for any purpose."

The question of the competency of a witness to testify is one for the *trial court,* however, and this Court will not disturb the trial court's ruling unless abuse of discretion can be shown. *Hernandez v. State,* 643 S.W.2d 397; *Watson v. State,* 596 S.W.2d 867; *Herrera v. State,* 462 S.W.2d 597; Art. 38.06, V.A.C.C.P.

Appellant does not contend the trial court abused its discretion in allowing Ash to testify. Indeed, no objection regarding competency was raised at trial until after Ash completed his testimony on direct and cross-examination. Since the issue of competency is for the trial court, there was no error in denying appellant's requested charge to have the jury decide Ash's competency. See *Burden v. State,* 634 S.W.2d 349, 354 (Tex.App.—Ft. Worth).

■ In two grounds of error appellant complains of the testimony of Officer Randall at punishment regarding an extraneous burglary allegedly committed by appellant ten days after the instant offense.

Appellant first asserts that such testimony was inadmissible under Art. 38.23, V.A.C.C.P., since "the evidence was the product of an illegal search and seizure." Appellant also asserts that the testimony was inadmissible "because the prosecutors suppressed the exculpatory fact that appellant's arrest was without probable cause."

Officer Randall testified without objection that he observed appellant in a Skaggs parking lot in Plano at approximately 1:30 a.m. on May 31, 1977. Randall stopped appellant and asked for identification, and asked appellant what was in a briefcase he was carrying. The officer radioed in a check on appellant's vehicle license number and also requested assistance. When additional officers arrived, Randall discovered that Executive Hair Designers, a business in the shopping center, had been broken into. Appellant admitted to committing the burglary.

When Randall completed his testimony appellant's counsel was tendered a copy of Randall's police report. After reading the report appellant's counsel objected for the first time that "There doesn't seem to have been any probable cause for this stop, and detention, and arrest, and we think his entire testimony should be stricken for that reason." A hearing was then held out of the presence of the jury in order to examine the probable cause question. At the conclusion of the hearing the trial court denied appellant's objection on the basis of appellant's untimely objection. Randall did not testify further.

A timely objection is required in order to preserve error regarding the alleged improper admission of evidence. See *Girndt v. State*, 623 S.W.2d 930; *Turner v. State*, 614 S.W.2d 144. In order to be considered timely, an objection must be made as soon as the ground of objection becomes apparent. *Granviel v. State*, 552 S.W.2d 107; *Guzman v. State*, 521 S.W.2d 267.

■ Appellant contends his objection was raised at the first opportunity since the ground for objection did not become apparent until Randall's statement was given to defense counsel. We cannot agree. Appellant does not assert that he was surprised by Randall's testimony regarding the burglary offense in Plano. In addition, before making any mention of the offense, Randall related detaining appellant, asking for identification, and searching the briefcase appellant was carrying. Since appellant ostensibly knew the purpose of Randall's testimony, counsel should have become aware that the possibility of an illegal detention existed. Randall then testified, again without objection, that he arrested appellant, and appellant confessed to the burglary of a business in the shopping center. Again, no objection was made. Good cause for the delayed objection has not been shown. Nothing is preserved for review.

Appellant's contention that Randall's testimony was inadmissible "because the prosecutors suppressed the exculpatory fact that appellant's arrest was without proba-

ble cause" is without merit. *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342, cited by appellant, holds that under certain circumstances, the state's non-disclosure of evidence favorable to the accused may constitute a denial of due process. Appellant does not maintain that the state suppressed any evidence regarding the arrest at the hearing held after appellant raised his objection. Rather, appellant contends that the state should have disclosed "the exculpatory fact that appellant's arrest was without probable cause" before calling Randall to testify. We fail to see how *Agurs* applies to this situation. The state believed that probable cause existed for the arrest, and after appellant objected to Randall's testimony, the state fully disclosed the circumstances of the arrest. Had appellant's objection been timely, the validity of the detention and arrest could have been delved into before Randall testified in front of the jury regarding the burglary. Appellant's ground of error is overruled.

In his final grounds of error appellant contends "the prosecution abused its discretion by refusing to enter a plea bargain with appellant," and that the trial court erred in denying appellant's motion to bar the death penalty because of the state's withdrawal of its plea bargain offer.

The record reflects that after appellant's first conviction for the instant offense was reversed, the state offered to recommend a life sentence in exchange for appellant's plea of guilty. Appellant rejected this offer. Later, the state again discussed the possibility of a life sentence, but appellant's counsel suggested appellant would take only a term of 50 or 60 years. Appellant's offer was not accepted by the state. Shortly before the instant trial began, *appellant* offered to plead guilty in exchange for a life sentence, but the state refused. Appellant contends the prosecution abused its discretion by refusing to accept his offer.

■ An accused has no constitutional right to demand that the state enter into a plea bargain. *DeRusse v. State*, 579

S.W.2d 224; *Morano v. State*, 572 S.W.2d 550; *McCarty v. State*, 498 S.W.2d 212. Although plea bargains are enforceable after they are entered into, see *Ex parte Williams*, 637 S.W.2d 943; *Ex parte Rogers*, 629 S.W.2d 741; here, no agreement was reached between the state and appellant, and thus no error is shown.

▇▇ Appellant's final contention is that the trial court erred in denying appellant's motion to bar the death penalty because appellant gave a statement to a San Antonio police officer in exchange for the officer's promise that he would not be prosecuted for capital murder. It is undisputed that the statement given to the officer was not admitted into evidence at either state of the trial, since appellant successfully challenged its admission in a motion to suppress prior to appellant's first trial for the instant offense. No error is shown. Appellant's final contention is overruled.

The judgment is affirmed.