COURT OF 
APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-04-224-CR
  
  
DUSTIN 
LYNN BATES                                                            APPELLANT
  
V.
  
THE 
STATE OF TEXAS                                                                  STATE
 
 
------------
 
FROM 
THE 367TH DISTRICT COURT OF DENTON COUNTY
 
------------
 
OPINION
 
------------
        A 
jury found Appellant Dustin Lynn Bates guilty of possession of a controlled 
substance, methamphetamine, in the amount of less than one gram, and assessed 
punishment at twenty-four months’ confinement in a state jail facility. The 
trial court sentenced him accordingly, and Appellant timely filed a notice of 
appeal.
Anders 
Standard
        Appellant’s 
court-appointed appellate counsel has filed a motion to withdraw as counsel and 
a brief in support of that motion. In the brief, counsel avers that, in his 
professional opinion, this appeal is frivolous. Counsel’s brief and motion 
meet the requirements of Anders v. California[1] 
by presenting a professional evaluation of the record demonstrating why, in his 
opinion, there are no arguable grounds for relief. This court afforded Appellant 
the opportunity to file a brief on his own behalf, but he did not.
        Once 
an appellant’s court-appointed counsel files a motion to withdraw on the 
ground that the appeal is frivolous and fulfills the requirements of Anders, 
we are obligated to undertake an independent examination of the record and to 
essentially rebrief the case for the appellant to see if there is any arguable 
ground that may be raised on his behalf.[2]  Our 
independent review of the record reveals that appellate counsel has correctly 
determined that there are no arguable grounds for direct appellate relief based 
on the record before us.
Pretrial
        There 
are no jurisdictional errors; the trial court had subject matter jurisdiction 
over this case.[3] Further, the indictment was not 
defective; it sufficiently conferred jurisdiction on the trial court and gave 
Appellant sufficient notice.[4]  Appellant filed 
several pretrial motions, but there is no evidence in the record that defense 
counsel presented the motions to the trial court or got a ruling.  To 
preserve a complaint, the record must show that the motions were presented to 
the trial court and that the trial court ruled or refused to rule.[5]  Consequently, any issues raised in the motions were 
not preserved for appeal.
Voir Dire
        During 
voir dire, some venire members indicated that they would assume intentional or 
knowing possession of contraband in a vehicle if the contraband was “within 
arm’s reach, . . . [l]ike if it’s in your glove box or your console or your 
door panel.”  One venire member named in this group, Mr. Mason, sat on 
Appellant’s jury.  The record does not show whether any of the unnamed 
venire members indicating that they would assume guilt from the mere presence of 
drugs within arm’s reach in one’s vehicle also served on the jury. Defense 
counsel did not challenge any venire members for cause on this ground and 
consequently did not preserve error.[6]
Guilt-Innocence
        The 
evidence shows that Appellant was driving alone in a vehicle that he had owned 
about a week. Officer Bryson stopped him for traffic violations.  At first, 
Appellant gave a false identity to Bryson, showing a birth certificate and a 
social security card, but Appellant later gave Bryson his real name and birth 
date. When Bryson discovered that there were warrants out for Appellant’s 
arrest, he arrested Appellant on the outstanding warrants and performed an 
inventory search of the vehicle, which was still registered to the prior owner. 
Bryson found a baggie of methamphetamine in the amount of less than one gram in 
a closed metal cylinder in the center floorboard.
        In 
addition to the cylinder and baggie of methamphetamine, however, the trial court 
also admitted without objection by defense counsel the following items taken 
from Appellant’s vehicle:
•      from 
the cylinder, a purple straw and empty baggie;
•      the 
birth certificate and social security card of Christopher Maples;
•      a 
black nylon bag;
•      a 
manilla envelope;
•      a 
glass tube pipe;
•      a 
Crown Royal bag;
•      a 
purple tray;
•      pieces 
of a broken pipe; and a
•      digital 
scale.
        Appellant’s 
theory at trial was that the drugs did not belong to him. As this court has 
previously explained,
   
When an accused is charged with unlawful possession of a controlled substance, 
the State must prove that the defendant exercised actual care, custody, control, 
or management over the contraband and that he knew the matter possessed to be 
contraband. When the accused is not in exclusive possession of the place where 
the substance is found, there must be additional independent facts and 
circumstances that affirmatively link the accused to the contraband in such a 
manner that it can be concluded he had knowledge of the contraband as well as 
control over it.
  
The 
“affirmative link” analysis is used to review the evidence of the accused's 
knowledge and control of the contraband. Among the factors to be considered in 
determining whether an affirmative link exists are: (1) the defendant's presence 
when the search warrant was executed; (2) whether the contraband was in plain 
view; (3) the defendant's proximity to and the accessibility of the narcotic; 
(4) whether the defendant was under the influence of narcotics when arrested; 
(5) whether the defendant possessed other contraband or narcotics when arrested; 
(6) whether the defendant made incriminating statements when arrested; (7) 
whether the defendant attempted to flee; (8) whether the defendant made furtive 
gestures; (9) whether there was an odor of the contraband; (10) whether other 
contraband or drug paraphernalia were present; (11) whether the defendant owned 
or had the right to possess the place where the drugs were found; (12) whether 
the place where the drugs were found was enclosed; (13) whether the accused was 
the driver of the automobile in which the contraband was found; (14) whether the 
appellant was found with a large amount of cash; and (15) whether the conduct of 
the accused indicated a consciousness of guilt.[7]
   
        Appellant’s 
pickup, which had a bench seat, was searched pursuant to the inventory 
exception. The drugs were inside a closed cylinder attached to a leather pouch 
in the center floorboard of the cab. There is no indication that Appellant was 
under the influence of drugs at the time of his arrest, nor did he make any 
incriminating statements regarding this offense. The police found other drug 
paraphernalia in the pickup, but no other drugs or cash. The police believed 
that Appellant’s conduct was suspicious—he got out of his pickup when the 
police pulled him over, he said he did not have his driver’s license with him 
(it was later discovered in his pocket), he stutteringly provided a false 
identity, and he was nervous and fidgety in the driver’s seat while the 
officer waited for back-up, repeatedly asking to get out of the truck to go 
smoke a cigarette. Applying the appropriate standards of review, the evidence is 
legally[8] and factually[9] 
sufficient to support the jury’s verdict.
        Because 
Appellant put ownership of the methamphetamine at issue, admission of the drug 
paraphernalia indicating drug use was proper.[10]  
Even though the birth certificate and social security card were not relevant to 
the offense of possession, it would be difficult for Appellant to successfully 
argue that their admission was harmful because that evidence supported his 
theory that the drugs belonged to someone else.
        However, 
the admission without objection of the scale and testimonial evidence that (1) 
the “My Weigh MX 200 digital scale” is mostly used for weighing drugs, (2) 
“they . . . place [the drug] on the scale to get an accurate measurement so 
they can pour it into their bag for transport or for sale,” and (3) four 
small, empty Ziploc baggies were found (4) which Bryson was only familiar with 
“for narcotics transport and carrying” was at least arguably improper and 
harmful.  That is, Appellant could make a very solid case for the evidence 
being extraneous offense evidence that should be excluded under rules 403 and 
404,[11]  not admissible same transaction 
contextual evidence.[12]  He could also connect 
the improper admission to the maximum sentence that he received.
        Officer 
Bryson also testified without objection by defense counsel that the pickup cab 
contained a lot of car parts, including a steering wheel, tools, hand tools, 
sockets, wrenches, screwdrivers, car stereos, a speaker, and an amplifier. The 
arguments for this evidence being extraneous offense evidence and not same 
transaction contextual evidence are even stronger than the arguments for 
excluding the extraneous drug offense evidence. We note that Appellant’s trial 
counsel referred to the car parts and tools in his opening statement; the 
prosecutor did not. The following exchange occurred on redirect by the 
prosecutor:
  
Q. Officer Bryson, I have just a couple of follow-up questions for you. [Defense 
Counsel] was asking you in regards to the truck, during a series of questions 
about the keys, whether or not the steering wheel was punched in the 
vehicle.  What does it mean for a steering wheel to be punched?
  
A. 
That the ignition has been broken so the vehicle can be driven without a set of 
keys.
  
Q. 
And what is that indicative of?
 
A. 
That's indicative of a car being stolen or having been stolen.
  
Q. 
Let's talk about what was inside the cab of the truck.  There has been 
reference to what you described as car parts.  Are you talking about 
carburetors, engine parts, things of that nature?
  
A. 
No.
  
Q. 
What kind of parts are you referring to?
  
A. 
There was a steering wheel inside the vehicle.
  
Q. 
What else besides a steering wheel in the cab of the truck did you find?
  
A. 
There were sockets; hand tools, meaning wrenches, pliers, screwdrivers, stuff 
like that; car stereos.
  
Q. 
Besides car stereos, a steering wheel, and tools, anything else inside the cab 
of the truck?
  
A. 
The bags. And I believe there was an amplifier inside there as well, a speaker.
    
On 
re-cross-examination by defense counsel, the following exchange occurred:
   
Q. You're not inferring that my client was stealing stereos, are you?
  
A. 
No.
  
Q. 
And if you thought that, you would have actually looked to see if that stereo 
has been stolen.  Is that right?
  
A. 
I did.  I ran all stereos inside to see if they were stolen.
  
Q. 
And they weren't, were they?
  
A. 
They weren't, but they might not have been reported.  A lot of people don't 
know the serial numbers for their stereos.
  
Q. 
But you're not saying my client had been stealing, are you?
  
A. 
No.
  
Q. 
And with respect to these car parts and tools, you're not saying my client was 
stealing those either, are you?
  
A. 
No.
 
 
On 
further redirect by the prosecutor, the discussion of the extraneous evidence 
continued,
   
Q. When you found those items inside the truck, why did—or how many car 
stereos are you talking about did you find inside of there?
  
A. 
There were three or four of them.
  
Q. 
Why did you run the serial numbers?
  
A. 
Because most cars come with one that comes inside the dash, and the other three 
or four were all loose and had the wires cut on the backside of them.
  
Q. 
And you said when you ran the serial numbers those stereos had not been reported 
stolen.  Does that mean that those stereos had not been stolen?
  
[Defense 
Counsel]: Objection, speculation.
  
THE 
COURT: He's got to make—
  
[Prosecutor]: 
Objection, Your Honor, to counsel—
  
[Defense 
Counsel]: Objection, speculation, Your Honor, and relevance. He's already said 
that my client—he’s not thinking that my client's stealing anything.
  
[Prosecutor]: 
I believe [Defense Counsel]'s opened the door, Your Honor.
  
THE 
COURT: I'm going to overrule the objection.
  
Q. 
Because when you ran the serial numbers on the stereos with the cut wires not 
being reported stolen, does that necessarily in fact mean they had not been 
stolen?
  
A. 
It's possible they could have been.
 
  
Upon 
further re-cross-examination by defense counsel, the following exchange took 
place:
   
Q. And you're not alleging that my client was stealing stereos, are you?
  
A. 
No.
   
Q. 
And no case has been filed on that, have there?
   
A. 
No.
 
 
Without 
examining whether defense counsel exacerbated the error of admitting the 
testimony about the stereos, car parts, and tools, we note that defense counsel 
lodged no objections under rule 403 or rule 404(b) to the admission of any of 
the extraneous evidence.[13]  Any error in its 
admission was therefore not preserved.[14]
        We 
note that the State did not refer to the tools, car parts, and stereos in its 
opening statement and closing argument. But it would seem that the State’s 
references to the extraneous offense evidence of possession with intent to 
deliver in its opening statement and closing argument, unobjected to by defense 
counsel, exacerbated the harm from the admission of the scale and the testimony 
about the scale and baggies.  We observe no other noteworthy issues or 
potential issues in either the opening statement or the closing argument at the 
guilt-innocence phase.
        Additionally, 
we note that the jury charge provided a limiting instruction regarding testimony 
of extraneous offenses, requiring that the jury consider the testimony only if 
the jury believed Appellant committed the extraneous offenses beyond a 
reasonable doubt, and then only on the issue of intent.[15]  
We see no limiting instruction, however, on the admission of physical evidence, 
that is, the digital scale.[16]   The jury 
charge conference does not appear in the record, nor do any written requests or 
objections to the charge, so we do not know whether or not defense counsel 
requested a limiting instruction on the scale.
        Other 
than the omission of the limiting instruction about the scale, we see no error 
in the charge at guilt-innocence.[17]
Punishment
        In 
its opening statement on punishment, the State misstated the law on 
probation.  Specifically, the prosecutor stated that “Dustin Lynn Bates 
[was] no longer eligible for probation because of his criminal history.”  
While it is true that the jury could not assess a probated sentence in this 
case,[18] the trial court had discretion to probate 
Appellant’s sentence.[19]  Defense counsel did 
not object. It would be difficult to show how Appellant was harmed by this 
misstatement of the law or defense counsel’s failure to object to it because 
the jury has no effect on how the trial court exercises its discretion.
        Defense 
counsel stipulated to the admissibility of the prior conviction packets offered 
by the State, as well as to the fact that Appellant was the defendant in each of 
those prior cases, the prior conviction packets were admitted, and the State 
rested its case.  Defense counsel then called witnesses on Appellant’s 
behalf, seeking a minimum sentence.  We note no errors in the charge at 
punishment.  No post trial motions appear in the record.
Ineffective Assistance
        To 
the extent that Appellant has an ineffective assistance of counsel claim based 
on any of the acts or omissions of defense counsel at trial, the record before 
us is not sufficient to sustain the claim.[20]  
A record sufficient to show ineffective assistance of counsel can rarely be 
developed on direct appeal, especially when no motion for new trial is filed and 
heard.  The Texas Court of Criminal Appeals has pointed out that an 
application for a writ of habeas corpus is the more appropriate vehicle to raise 
ineffective assistance of counsel claims in this situation.[21]
Conclusion
        After 
our independent review of this record, we are constrained to agree with 
appellate counsel’s determination that any direct appeal of this case would be 
frivolous.  Therefore, we grant counsel’s motion to withdraw from this 
case and affirm the trial court’s judgment.
   
   
                                                                  PER 
CURIAM
   
   
PANEL 
F:   DAUPHINOT, LIVINGSTON, and HOLMAN, JJ.
 
LIVINGSTON, 
J. concurs without opinion.
 
DO 
NOT PUBLISH
Tex. R. App. P. 47.2(b)
 
DELIVERED: 
April 28, 2005


NOTES
1.  
386 U.S. 738, 87 S. Ct. 1396 (1967).
2.  
Stafford v. State, 813 S.W.2d 503, 511 (Tex. Crim. App. 1991).
3.  
See Tex. Code Crim. Proc. Ann. 
art. 4.05 (Vernon 2005); Tex. Penal Code 
Ann. § 12.04(a) (Vernon 2003).
4.  
See Tex. Const. art. V, § 
12(b); Tex. Health & Safety Code Ann. 
§ 481.112(b) (Vernon 2003); Studer v. State, 799 S.W.2d 263, 272-73 
(Tex. Crim. App. 1990).
5.  
Tex. R. App. P. 33.1(a); Thompson 
v. State, 691 S.W.2d 627, 635 (Tex. Crim. App. 1984); see Mendez v. State, 
138 S.W.3d 334, 342 (Tex. Crim. App. 2004).
6.  
See Johnson v. State, 43 S.W.3d 1, 6-7 (Tex. Crim. App. 2001).
7.  
McQuarters v. State, 58 S.W.3d 250, 259 (Tex. App.—Fort Worth 2001, 
pet. ref’d) (citations omitted).
8.  
See Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 
(1979); Burden v. State, 55 S.W.3d 608, 612 (Tex. Crim. App. 2001); Dewberry 
v. State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), cert. denied, 529 
U.S. 1131 (2000).
9.  
See Zuniga v. State, 144 S.W.3d 477, 481-82, 484-87 (Tex. Crim. App. 
2004); Sims v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003); Cain 
v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).
10.  
See McQuarters, 58 S.W.3d at 259.
11.  
Tex. R. Evid. 403, 404(b).
12.  
See Wyatt v. State, 23 S.W.3d 18, 25 (Tex. Crim. App. 2000); Rogers v. 
State, 853 S.W.2d 29, 33 (Tex. Crim. App. 1993); Best v. State, 118 
S.W.3d 857, 864 (Tex. App.—Fort Worth 2003, no pet.).
13.  
See Tex. R. Evid. 403, 
404(b).
14.  
See Tex. R. App. P. 
33.1(a)(1); Mosley v. State, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) 
(op. on reh’g), cert. denied, 526 U.S. 1070 (1999).
15.  
See Tex. R. Evid. 105(a).
16.  
See id.
17.  
See Tex. Code Crim. Proc. Ann. 
art. 36.16 (Vernon 1981).
18.  
See Tex. Code Crim. Proc. Ann. 
art. 42.12, § 4(d)(2), (3), (e) (Vernon Supp. 2004-05).
19.  
See id. § 15(a)(1).
20.  
See Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 
(1984); Thompson v. State, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999); Hernandez 
v. State, 988 S.W.2d 770, 770 (Tex. Crim. App. 1999) (all providing standard 
of review for ineffective assistance claims).
21.  
Rylander v. State, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003).