

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 2-08-374-CR

LEROY CRUZ                                                            APPELLANT

V.

THE STATE OF TEXAS                                                         STATE

------------

FROM THE 158TH DISTRICT COURT OF DENTON COUNTY

------------

## MEMORANDUM OPINION[1]

------------

Appellant Leroy Cruz pled guilty to two counts of online solicitation of a

minor, and the jury convicted him and assessed his punishment at two years'

confinement in a state jail facility on the first count and ten years' confinement

in prison on the second count.  The trial court sentenced him accordingly.  In

two points, Appellant complains that the trial court erred by denying his

---

[1] *See* Tex. R. App. P. 47.4.

requested jury instruction concerning parole eligibility for state jail felonies and that the trial court abused its discretion by overruling his objection that the State was arguing outside the record. Because we hold that the trial court did not err, we affirm the trial court's judgment.

In his first point, Appellant complains that the trial court refused to instruct the jury that there is no parole on a state jail felony. As the State points out, in *Best v. State*, this court held that "[b]ecause the legislature has not specified that juries be informed that parole . . . does not apply to state jail felonies, . . . such an instruction is not required."[2] We therefore hold that the trial court did not err in refusing Appellant's requested language or in sustaining the State's objection to the requested language.[3] We overrule Appellant's first point.

In his second point, Appellant contends that the trial court violated his federal and state constitutional rights to a fair trial by allowing the State to argue evidence outside the record. To be permissible, the State's jury argument must fall within one of the following four general areas: (1) summation of the

---

[2] 118 S.W.3d 857, 866 (Tex. App.—Fort Worth 2003, no pet.).

[3] *See id.*

2

evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; or (4) plea for law enforcement.[4]

Absent an objection to jury argument at trial, nothing is presented for review.[5] The objection must be timely and specific, and the defendant must pursue the objection to an adverse ruling.[6] An objection is timely if it is made as soon as the ground of objection becomes apparent.[7]

On the State's cross-examination of Appellant at punishment, the following dialogue occurred:

Q    Define mistake. You've said that over and over and over again today that this was a mistake, it was your mistake; you made a mistake. What does mistake mean to you?

A    My mistake was getting on the stupid Internet—

Q    No, that's not my question, sir. The word mistake, what does that word mean to you? I'm not talking about what you

---

[4] *Felder v. State*, 848 S.W.2d 85, 94–95 (Tex. Crim. App. 1992), *cert. denied*, 510 U.S. 829 (1993); *Alejandro v. State*, 493 S.W.2d 230, 231 (Tex. Crim. App. 1973).

[5] *Threadgill v. State*, 146 S.W.3d 654, 667 (Tex. Crim. App. 2004); *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996), *cert. denied*, 520 U.S. 1173 (1997).

[6] *Mathis v. State,* 67 S.W.3d 918, 927 (Tex. Crim. App. 2002); *Cockrell*, 933 S.W.2d at 89; *Carter v. State*, 614 S.W.2d 821, 823 (Tex. Crim. App. 1981); *see also* Tex. R. App. P. 33.1(a)(1).

[7] *Thompson v. State*, 691 S.W.2d 627, 634 (Tex. Crim. App.), *cert. denied*, 474 U.S. 865 (1985).

did; I'm talking about what the word mistake means to you. What does it mean to you?

A    I did something wrong.  I made a bad decision.

Q    Well, there's a difference, isn't there, Mr. Cruz, between a mistake, an accident, and doing something on purpose?  Those are two different things, aren't they?

A    An accident and doing something on purpose?  Yes, it's two different things.

Q    This was on purpose, wasn't it?

A    That I did it on purpose?

Q    Yeah.

A    I'm not sure how to answer that because—I'm not sure if I did it on purpose or not, sir.  I was driven.

Q    Okay. Let's talk about that.  You said a minute ago that this entire thing and that entire episode of you seeking out that child on 16 August of last year, your words, I think, were, that it was a culmination of a lot of things that were going on in your life, and you handled it badly.  That's what you said just a moment ago to your lawyer?

A    That's correct.

Q    And when you said it's a culmination of a lot of things, you describe those things, you're talking about external things.  What you're saying to this jury is, What I did was a culmination of external stuff:  Stress with my wife, stress with my church, and, you know, we lost our building, stress with my job, I've got these medical problems.  Those were all the things you talked about, and you said a minute ago that's what led you here, isn't that right, that you handled those things badly?

A    That's what led me to make bad decisions.

Q    Okay.  Well, you're 50 years old; is that right?

A    That's correct.

Q    You were 49 at the time?

A    Yes, sir.

Q    We can agree, can we not, that it is not normal, under any circumstances, for a 50-year-old man to want sex with a 15-year-old child, that's not normal, under any circumstance?

A    I completely—I completely agree.

Q    We can agree, can we not, that there ain't no set of external stresses or concerns or problems or marital difficulties that are going to plant in your heart a desire for sex with a child? That's not going to happen, is it, Mr. Cruz?

A    I wasn't planning on having sex with a child, sir.

. . . .

Q    Okay. You're telling this jury, you're looking these 12 people in the eye right here and telling them you were going up to talk to a 15-year-old girl?

A    Yes.

Q    What were you going to talk to her about?

A    As bad of decisions I was making that day, I was probably going to talk sex.

Q    Like you had been on the Internet?

A    Yes, sir.

5

Q    But you were just going to talk, you weren't going to do anything?  Is that really what you're telling these people?

A    That's what I'm telling them people . . . .

. . . .

Q    It was going to be a short conversation, wasn't it?

A    Yes, because I had to be at work.

. . . .

Q    And so back to my question, sir:  The desire to seek out a child for some form of sexual gratification, your marital situation didn't put that in it, did it?

A    Well, no.

Q    You didn't feel that because of your situation with your wife, did you?

A    No.

. . . .

Q.   You did not feel that because of your troubles at church, did you?

A    Feel what?

Q    The desire to seek out a child to talk sex or to have sex, sir, the desire to discuss blow jobs and show yourself naked to a 15-year-old child, the desire to meet a 15-year-old child for a blow job for $50, the desire to do that wasn't there because you were stressed out because of church, was it? That's not true, is it?

6

[Defense Counsel]: Your Honor, I'm going to object. That's an unintelligible question. I don't even understand it.

THE COURT: Would you like to rephrase the question?

Q [By Prosecutor] Sir, the desire that drove you to Denton that day was not due to anything external in your life, was it?

A I made a poor decision because of a lot that was going on in my life, and my mind was clouded. I don't think—I know—I would—I clearly wasn't clear-minded to do something like that. I've never done anything like that. I made a bad decision.

Q You desired to seek that child out—Your desire to seek that child out was not caused by these external events and situations that you've talked about, was it?

[Defense Counsel]: Objection, it's been asked. It has been answered.

[Prosecutor]: It has absolutely not been answered.

THE COURT: I would agree. Overruled.

Q [By Prosecutor] Those things did not cause you to have that desire and come up here, did they, sir?

A I don't know how to answer you. I don't know how to answer you. I'm being as honest as I can possibly be.

During the State's closing argument, the following transpired:

[Prosecutor:] And then he comes in here, and he says, I'm guilty. Well, he didn't have a choice; he was

7

caught. Have mercy on me; I did it, but let me tell you why. All these external things.

And the one question that the guy refused to answer when he was up on that witness stand, Isn't it true, sir, that your job, that your marriage, that your church, all that stuff, those external things that you talked about, those things did not make you want to have sex with a child, did they?

[Defense Counsel]: Objection, Your Honor, misstatement of the evidence. He answered that question.

Appellant did not get a ruling on his objection, so any complaint regarding this portion of the prosecutor's argument is forfeited.[8] The State's argument continued:

[Prosecutor]: You're darn right he answered it. Remember what he said? I don't know how to answer that question. I don't know how to answer that question. Those were the words that came out of his mouth.

[Defense Counsel]: Objection, Your Honor, that was not his answer, and he's arguing outside the evidence, and we object.

THE COURT: The objection is overruled.

[Defense Counsel]: Those were the words that came out of his mouth. I'd ask it four, five times; he wouldn't answer it. Finally, when I finally

---

[8] *See* Tex. R. App. P. 33.1(a)(2); *Mendez v. State*, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004).

pinned him down, I don't know how to answer that question.

Based on the State's cross-examination excerpted above, we hold that the argument complained of was a proper summation of the evidence. We overrule Appellant's second point.

Having overruled Appellant's two points, we affirm the trial court's judgment.

LEE ANN DAUPHINOT
JUSTICE

PANEL: LIVINGSTON, DAUPHINOT, and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: March 18, 2010