COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-08-374-CR

 

 

LEROY CRUZ                                                                      APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

            FROM
THE 158TH DISTRICT COURT OF DENTON COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------








Appellant
Leroy Cruz pled guilty to two counts of online solicitation of a minor, and the
jury convicted him and assessed his punishment at two years=
confinement in a state jail facility on the first count and ten years=
confinement in prison on the second count. 
The trial court sentenced him accordingly.  In two points, Appellant complains that the
trial court erred by denying his requested jury instruction concerning parole
eligibility for state jail felonies and that the trial court abused its
discretion by overruling his objection that the State was arguing outside the
record.  Because we hold that the trial
court did not err, we affirm the trial court=s
judgment.

In his
first point, Appellant complains that the trial court refused to instruct the
jury that there is no parole on a state jail felony.  As the State points out, in Best v. State,
this court held that A[b]ecause the legislature has not
specified that juries be informed that parole . . . does not apply to state
jail felonies, . . . such an instruction is not required.@[2]  We therefore hold that the trial court did
not err in refusing Appellant=s
requested language or in sustaining the State=s
objection to the requested language.[3]  We overrule Appellant=s first
point.








In his
second point, Appellant contends that the trial court violated his federal and
state constitutional rights to a fair trial by allowing the State to argue
evidence outside the record.  To be
permissible, the State=s jury argument must fall within
one of the following four general areas: 
(1) summation of the evidence; (2) reasonable deduction from the
evidence; (3) answer to argument of opposing counsel; or (4) plea for law
enforcement.[4]

Absent
an objection to jury argument at trial, nothing is presented for review.[5]  The objection must be timely and specific,
and the defendant must pursue the objection to an adverse ruling.[6]  An objection is timely if it is made as soon
as the ground of objection becomes apparent.[7]

On the
State=s
cross-examination of Appellant at punishment, the following dialogue occurred:

Q      Define mistake.  You=ve said that over and
over and over again today that this was a mistake, it was your mistake; you
made a mistake.  What does mistake mean
to you?

 

A      My mistake was getting on
the stupid InternetC 

 








Q      No, that=s not my question,
sir.  The word mistake, what does that
word mean to you?  I=m not talking about what
you did; I=m talking about what the
word mistake means to you.  What does it
mean to you?

 

A      I did something wrong.  I
made a bad decision.

 

Q      Well, there=s a difference, isn=t there, Mr. Cruz,
between a mistake, an accident, and doing something on purpose?  Those are two different things, aren=t they?

 

A      An accident and doing something on purpose?  Yes, it=s two different things.

 

Q      This was on purpose, wasn=t it?

 

A      That I did it on purpose?

 

Q      Yeah.

 

A      I=m not sure how to answer
that becauseCI=m not sure if I did it on
purpose or not, sir.  I was driven.

 

Q      Okay. Let=s talk about that.  You said a minute ago that this entire thing
and that entire episode of you seeking out that child on 16 August of last
year, your words, I think, were, that it was a culmination of a lot of things
that were going on in your life, and you handled it badly.  That=s what you said just a moment ago to your lawyer?

 

A      That=s correct.

 

Q      And when you said it=s a culmination of a lot of things, you describe
those things, you=re talking about external
things.  What you=re saying to this jury
is, What I did was a culmination of external stuff:  Stress with my wife, stress with my church,
and, you know, we lost our building, stress with my job, I=ve got these medical
problems.  Those were all the things you
talked about, and you said a minute ago that=s what led you here, isn=t that right, that you
handled those things badly?








A      That=s what led me to make bad
decisions.

 

Q      Okay.  Well, you=re 50 years old; is that
right?

 

A      That=s correct.

 

Q      You were 49 at the time?

 

A      Yes, sir.

 

Q      We can agree, can we not, that it is not normal, under any
circumstances, for a 50‑year‑old man to want sex with a 15‑year‑old
child, that=s not normal, under any
circumstance?

 

A      I completelyCI completely agree.

 

Q      We can agree, can we not, that there ain=t no set of external
stresses or concerns or problems or marital difficulties that are going to
plant in your heart a desire for sex with a child?  That=s not going to happen, is it, Mr. Cruz?

 

A      I wasn=t planning on having sex
with a child, sir.

 

. . . . 

 

Q      Okay. You=re telling this jury, you=re looking these 12
people in the eye right here and telling them you were going up to talk to a 15‑year‑old
girl?

 

A      Yes.

 

Q      What were you going to talk to her about?

 

A      As bad of decisions I was making that day, I was probably going
to talk sex.

 

Q      Like you had been on the
Internet?

 

A      Yes, sir.








Q      But you were just going to talk, you weren=t going to do
anything?  Is that really what you=re telling these people?

 

A      That=s what I=m telling them people . .
. .

 

. . . . 

 

Q      It was going to be a short
conversation, wasn=t it?

 

A      Yes, because I had to be
at work.

 

. . . . 

 

Q      And so back to my question, sir:  The desire to seek out a child for some form
of sexual gratification, your marital situation didn=t put that in it, did it?

 

A      Well,
no.

 

Q      You didn=t feel that because of
your situation with your wife, did you?

 

A      No.

 

. . . . 

 

Q.     You did not feel that because of your troubles at church, did
you?

 

A      Feel what?

 

Q      The desire to seek out a child to talk sex or to have sex, sir,
the desire to discuss blow jobs and show yourself naked to a 15‑year‑old
child, the desire to meet a 15‑year‑old child for a blow job for
$50, the desire to do that wasn=t there because you were stressed out because of
church, was it?  That=s not true, is it?

 








[Defense Counsel]:       Your Honor, I=m going to object.  That=s an unintelligible question.  I don=t even understand it.

 

THE COURT:       Would you like to rephrase the question?

 

Q [By Prosecutor] Sir, the desire that drove you to Denton that
day was not due to anything external in your life, was it?

 

A      I made a poor decision because of a lot that was going on in my
life, and my mind was clouded.  I don=t thinkCI knowCI wouldCI clearly wasn=t clear‑minded to
do something like that.  I=ve never done anything
like that.  I made a bad decision.

 

Q      You desired to seek that child outCYour desire to seek that
child out was not caused by these external events and situations that you=ve talked about, was it?

 

[Defense Counsel]:       Objection, it=s been asked.  It has been answered.

 

[Prosecutor]:       It has absolutely not been answered.

 

THE COURT:       I would agree.  Overruled.

 

Q [By Prosecutor] Those things did not cause you to have that
desire and come up here, did they, sir?

 

A      I don=t know how to answer
you.  I don=t know how to answer
you.  I=m being as honest as I
can possibly be.

 

During the State=s closing argument, the
following transpired:

 








[Prosecutor:]       And then he comes in here, and he says, I=m guilty.  Well, he didn=t have a choice; he was
caught.  Have mercy on me; I did it, but
let me tell you why.  All these external
things.

 

And the one question that the guy refused to answer when he was up on
that witness stand, Isn=t it true, sir, that your
job, that your marriage, that your church, all that stuff, those external
things that you talked about, those things did not make you want to have sex
with a child, did they?

 

[Defense Counsel]:       Objection, Your Honor, misstatement of
the evidence.  He answered that question.

 

Appellant
did not get a ruling on his objection, so any complaint regarding this portion
of the prosecutor=s argument is forfeited.[8]  The State=s
argument continued:

[Prosecutor]:       You=re darn right he answered it.  Remember what he said?  I don=t know how to answer that question.  I don=t know how to answer that question.  Those were the words that came out of his
mouth.

 

[Defense Counsel]:       Objection, Your Honor, that was not his
answer, and he=s arguing outside the
evidence, and we object.

 

THE COURT:       The objection is overruled.

 








[Defense Counsel]:       Those were the words that came out of his
mouth.  I=d ask it four, five
times; he wouldn=t answer it.  Finally, when I finally pinned him down, I
don=t know how to answer that
question.

 

Based on the State=s
cross-examination excerpted above, we hold that the argument complained of was
a proper summation of the evidence.  We
overrule Appellant=s second point.

Having
overruled Appellant=s two points, we affirm the
trial court=s judgment.

 

 

LEE ANN DAUPHINOT

JUSTICE

 

PANEL:  LIVINGSTON, DAUPHINOT, and MEIER, JJ.

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

DELIVERED:  March 18, 2010











[1]See Tex. R. App. P. 47.4.





[2]118 S.W.3d 857, 866 (Tex.
App.CFort Worth 2003, no
pet.).





[3]See id.





[4]Felder v. State, 848 S.W.2d 85, 94B95 (Tex. Crim. App.
1992), cert. denied, 510 U.S. 829 (1993); Alejandro v. State, 493
S.W.2d 230, 231 (Tex. Crim. App. 1973).





[5]Threadgill v. State, 146 S.W.3d 654, 667
(Tex. Crim. App. 2004); Cockrell v. State, 933 S.W.2d 73, 89 (Tex. Crim.
App. 1996), cert. denied, 520 U.S. 1173 (1997).





[6]Mathis v. State, 67 S.W.3d 918, 927 (Tex.
Crim. App. 2002); Cockrell, 933 S.W.2d at 89; Carter v. State,
614 S.W.2d 821, 823 (Tex. Crim. App. 1981); see also Tex. R. App. P.
33.1(a)(1).  





[7]Thompson v. State, 691 S.W.2d 627, 634
(Tex. Crim. App.), cert. denied, 474 U.S. 865 (1985).





[8]See Tex. R. App. P.
33.1(a)(2); Mendez v. State, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004).